THOMAS McGRADE, Appellant, *v.* GERMAN SAVINGS INSTI-
TUTION, Respondent.

July 3, 1877.

When a bank receives deposits, it undertakes to pay the depositor's check to
the holder, if it has funds of the depositor sufficient to pay the check when
presented; and this promise or agreement between the bank and its
depositor, implied from the universal usage or custom of the business
world, enures to the benefit of the holder of the check; and if he presents
it to the bank for payment, and payment is refused, the bank having funds
of the depositor sufficient to pay it when presented, he may sue, and
recover of the bank upon the check.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

M. KINEALY, for appellant : A check is an appropriation
of the fund. — *Morrison* v. *McCartney*, 30 Mo. 88 ; *Chou-
teau* v. *Rowse*, 56 Mo. 67. An appropriation of the fund
is an equitable assignment of it. — *Danklessen* v. *Brainard*,
3 Daly, 183 ; *Christmas* v. *Russell*, 14 Wall. 69. And suit
may be maintained on the check by the payee against the
bank, without acceptance. — *Roberts* v. *Corbin*, 26 Iowa,
315 ; *Chicago, etc., Ins. Co.* v. *Sanford*, 28 Ill. 168 ; *Munn*
v. *Burch*, 25 Ill. ; *Union National Bank* v. *Oceana County
Bank* (Ill. Sup. Ct.), 1 Law & Eq. Rep. (1876) 97 ; *Lester*
v. *Given*, 8 Bush, 358 ; *Buckner* v. *Sayre*, 18 B. Mon.
754.

FINKELNBURG & RASSIEUR, for respondent : The holder
of an unaccepted check cannot maintain an action against
the bank upon which it is drawn. — *Bank of the Republic* v.
*Willard*, 10 Wall. 155 ; *Bank of Commerce* v. *Russell*,
2 Dill. 215 ; *Ætna National Bank* v. *Fourth National
Bank*, 46 N. Y. 82 ; *Tyler* v. *Gould*, 48 N. Y. 682 ; *Dana*
v. *Third National Bank*, 13 Allen, 445 ; *Bullard* v. *Ran-
dall*, 1 Gray, 605 ; *Loyd* v. *Caffrey*, 46 Penn. 410 ; *Moses*
v. *Franklin Bank of Baltimore*, 34 Md. 575 ; *Bellamy* v.
*Majoribanks*, 8 Eng. Law & Eq. 522 ; *Wharton* v. *Walker*,

4 Barn. & Cress. 163; *Warwick* v. *Rogers*, 5 Man. & G. 374. See, also, Byles on Bills, Sharswood's Notes, ed. 1856, p. 81; 2 Pars. on Notes & Bills, 61; Grant on Bank. 7; *Knecht, Admr.*, v. *United States Savings Institution*, 2 Mo. App. 563.

BAKEWELL, J., delivered the opinion of the court.

The plaintiff, in his petition, alleges that defendant was on April 26, 1876, a banking corporation, doing business in St. Louis, and had then on deposit $477.67 of one Fletcher, who, at that date, for a valuable consideration, by an order in writing, assigned, made over, and ordered defendant to pay to plaintiff said sum; that plaintiff then and there presented said instrument to defendant, and offered to surrender the same; that defendant then received the same, and without any just cause refused to pay said money, or any part thereof, and has ever since refused to pay the same, and has converted the sum aforesaid to defendant's own use, to the damage of plaintiff the amount of said order. Defendant puts in issue all the material allegations of the petition, except the incorporation of defendant; but says that, at the date named, a draft or bill of exchange, commonly called "check," of the date and amount stated, drawn by Fletcher in favor of plaintiff, was presented at the counter of defendant and refused; that at that date Fletcher was credited on his deposit account with defendant with the sum of $10,000, for money loaned; that he was then, and is, wholly insolvent, and was adjudicated a bankrupt on April 29, 1875; that he fraudulently removed out of warehouse property pledged to plaintiff for his debt, and converted the same to his own use; and that the money on deposit as aforesaid was the proceeds of the property so fraudulently converted; wherefore defendant was entitled to set off the debt due by Fletcher to defendant against the credit standing on its books to Fletcher; and

that, on such a set-off, defendant owes Fletcher nothing whatever.

Plaintiff introduced the following testimony:

Plaintiff, being sworn as a witness on his own behalf, gave testimony tending to prove that he was the owner of the check sued on; that he received it from Patrick Fletcher, who then did business under the name and style of Fletcher & Co., in payment for some provisions sold to him that day; that he received the check on the day of its date, and deposited it in the Third National Bank of this city. It was not paid, and is yet unpaid, and the debt for which it was given is still unpaid.

Nelson Cameron, sworn as a witness on behalf of plaintiff, gave testimony tending to prove that on the day of the date of the check sued on, and on the next and succeeding days, and up to May 1, 1875, there was on deposit with defendant, who was then engaged in business at the city of St. Louis, as a bank of deposit and discount, a sum of money to the credit of "Fletcher & Co.," exceeding in amount all checks then drawn (or outstanding and unpaid) by said Fletcher & Co., in addition to all matured indebtedness of said Fletcher & Co. to defendant; and that after payment of all checks drawn by Fletcher & Co., including the one sued on, and of all matured indebtedness due by Fletcher & Co. to defendant, a balance would remain in the hands of defendant to the credit of Fletcher & Co., on April 26, 27, and 28, 1875.

Plaintiff then offered in evidence the check sued on, which is as follows:

"No. 9811.                    St. Louis, April 26, 1875.

"German Savings Institution (s. e. cor. Main and Market streets, St. Louis), pay to T. McGrade & Co., four hundred and seventy-seven $\frac{100}{100}$ dollars.

           [Stamp.]          "Fletcher & Co.
"$477$\frac{67}{100}$.                         N. W. Cameron."

Endorsed, " T. McGrade & Co., *per* H. McGrade, Attorney.  Cancelled by mistake."

Across the face was written, " Protested for non-payment, St. Louis, Mo., April 27th, 1875.  Theodore Papin, Notary Public."

Plaintiff also read the protest of the check, which was in usual form.

It was admitted that said check was presented for payment to defendant on April 29, 1875, and that payment was refused.

T. A. Siebenmann, being sworn as a witness for plaintiff, testified that he was teller of defendant; that the check sued on was presented for payment to defendant on April 27, 1875, and payment refused by witness, under the instructions of defendant's treasurer, Mr. Hospes.  Witness put the check on the file by mistake, and then marked it on the back, " Cancelled by mistake."  He put it on the file, with a lot of other checks, when he received it from the clearinghouse.

R. Hospes, being sworn, testified that on the morning of April 27, 1875, he learned from Mr. Fletcher that he was insolvent and unable to go on in business, and that he would not be able to meet his maturing note for $10,000, due May 1, 1875, and witness then ordered witness Siebenmann not to pay any more checks of Fletcher & Co., as there was not enough to pay off all the indebtedness of Fletcher & Co., matured and not matured.  There was enough to pay all the checks of Fletcher & Co. to the bank, but witness refused to pay the checks, so as to retain the fund then to the credit of Fletcher & Co. to pay this note, due May 1, 1875, for which purpose there was not quite enough.  Witness was then treasurer of defendant, and had the note due May 1, 1875, secured by warehouse-receipts given by Fletcher on merchandise in his own store, but that the greater part of the merchandise pledged in such warehouse-receipts had been disposed of by Fletcher & Co., without

defendant's knowledge, and that the proceeds of what was left, $2,076.04, together with the balance on deposit account, $7,715.37, were applied to the ten-thousand-dollar note due May 1, 1875, leaving a small balance of $208.59 still due defendant to this day.

Defendant then offered in evidence what he calls warehouse-receipts, but what were, in fact, receipts issued by Fletcher for merchandise owned by him, and lying in his store.   These papers showed, at best, a mere attempt to mortgage personalty ; there was no change of possession ; no title passed by them ; they were nullities, and were properly excluded by the court, on the objection of plaintiff. This was all the evidence ; and the court declared the law to be that on this evidence plaintiff was not entitled to recover.    Plaintiff took a nonsuit, and, a motion to set the nonsuit aside having been overruled, plaintiff appeals.

Defendant insists that plaintiff declares upon an acceptance, and showed no acceptance.   We do not think that plaintiff declares upon·an acceptance.   The petition substantially alleges that plaintiff was the holder for value of a check drawn against defendant by a depositor ; that defendant was in funds ; that the check was presented and payment refused.   He proved this state of facts, and the pleadings and evidence, and action of the court, fairly raise the question whether the holder for value of a check, presented for payment, but not accepted, can maintain a suit against the bank on which it draws.   If he can, as the bank was manifestly in funds to pay the check, plaintiff was entitled to judgment for the amount claimed.   If not, the nonsuit should not be set aside.

The question has never been judicially determined in this State.   It is one of great importance, and one which has been argued before the tribunals of last resort in other States, with opposite results.   It has been decided in Massachusetts by a court of the highest respectability, though not of last resort, and by the Supreme Court of the United

States, that no recovery can be had against the bank by the holder of the check; the opposite doctrine is held in Iowa, Kentucky, Illinois, and South Carolina.   We are not aware that the question has been directly passed upon in any other States of the Union.   That the holder of the check cannot sue the bank seems to be the doctrine in England, and that he can is very earnestly and ably argued by the learned and ingenious American author of the well-known treatise on Banks and Banking.   Morse on Banks, etc., 459, 474.

"It is undoubtedly a general rule," says Mr. Parsons (Pars. on Notes & Bills, 59), "that a drawee who has refused to accept a bill of exchange cannot be sued by the payee upon that bill; nor, without special reasons, for his failure to accept it.   If a check be drawn on a bank, the bank must have something of the same power and authority."   *   *   *   "While, therefore, we admit that a bank, may be liable in a proper action to a holder of a check for a wanton or fraudulent refusal to pay the check, whereby the holder lost the funds, we should say that only in such cases could an action be maintained against the bank for the refusal."   And in a note to the text it is said that the weight of authority is with the view that, under ordinary circumstances, the bank on which the check is drawn owes no duty to the holder, and is liable to no claim by him for refusing to pay checks, though it has sufficient funds, and many cases are cited in support of this statement, all of which we have examined.

Now, so far as this country is concerned, the weight of authority is decidedly the other way, only one tribunal of last resort having, so far as we know, ruled this precise question against the right of the holder of the check to sue.   *Bank of the Republic* v. *Millard*, 10 Wall. 155. That tribunal is one, it is true, preëminent for its dignity and for the character of the learned judges who compose it. It is the Supreme Court of the United States.   The ques-

tion was also decided against the holder of the check, in an extremely well-considered opinion delivered by the Superior Court of Suffolk County, Massachusetts, and reported in the *American Law Journal* of November, 1857, page 711 (*National Bank* v. *Elliott Bank*). Judge Abbott dissents, and delivers a dissenting opinion. In South Carolina, on the other hand, it is held that where a check is drawn by a depositor on a bank having sufficient funds of the depositor on hand to meet the check, the holder, on giving notice to the bank, has the right to be paid, and if payment be refused, may maintain *assumpsit* against the bank on the implied promise which the law raises in his behalf. *Fogarties* v. *State Bank*, 12 Rich. 518 (1860), the chief justice dissenting, and delivering a dissenting opinion. Since the date of these opinions, the Supreme Court of Iowa (*Roberts* v. *Corbin*, 26 Iowa, 321 (1868), of Illinois (*Munn* v. *Burch*, 25 Ill. 35 (1861), and of Kentucky (*Lester* v. *Given*, 8 Bush, 357 (1871), have, in carefully-considered cases, maintained the doctrine as laid down in South Carolina.

The doctrine that the holder can sue the drawee without acceptance is, however, confined to checks. It does not apply to drafts or bills of exchange, the reasons upon which it is founded having no application whatever to that species of paper. For this reason a large number of authorities to which we are referred as of weight against the doctrine, and which we find cited in the text-books and briefs of counsel where this subject is treated, are not in point.

The Supreme Court of the United States disposes of the doctrine that the holder of a check cannot sue the bank, in a brief opinion, in which, after stating that it is no longer an open question in that court that the relation of banker and depositor is that of debtor and creditor, and that the contract is a purely legal one, and has nothing of the nature of a trust about it, the following reasons are then set forth in support of the view that the action will not lie: First,

the depositor can undoubtedly sue, but if the holder of the check can also sue, there is a right of action subsisting at the same time in two persons, upon one promise, for the same thing. Second, the check is taken on the credit of the depositor; the bank has no duty to the holder of the check, and there is no privity of contract. If it be said that there is privity between the bank and check-holder, then the depositor could not countermand the check, and the bank would be bound to pay, though the fund was exhausted, before presentment, by subsequent checks. The court dismisses the further consideration of the subject with the remark that it would serve no good purpose to review the few cases which assert a contrary doctrine. This opinion was delivered in 1869, after the full consideration of these reasons against the doctrine in the treatise of Morse, and in the cases cited in Illinois and South Carolina, and after the decision in Massachusetts. The affirmance in Iowa and Kentucky of the doctrine that the check-holder can sue the bank was subsequent to the decision of the Supreme Court of the United States.

It would be useless for us to go over ground which has been so fully explored. The paths are beaten; and perhaps nothing new remains to be said, and perhaps nothing better can be said than what has been said upon this vexed question.

This court has said that the relation of the bank to its depositor is not that of a trustee, of a mere custodian or agent, but that of debtor and creditor; and that the original deposit, and every subsequent deposit, is, in strict legal effect, a loan to the bank, and every payment a repayment of the loan *pro tanto*. *Knecht, Admr.,* v. *United States Savings Inst.,* 2 Mo. App. 563. The weight of authority is altogether so. But the point in the present case is not presented, and was not at all considered, in *Knecht, Administrator,* v. *United States Savings Institution,* and that decision in no way affects the present question.

The case just cited was one in which a depositor died having in bank a maturing note. After the note had matured, the bank credited the note with the amount of the deposit account, and proved up against the estate of the deceased, the balance remaining due upon the note, which was allowed and classified in favor of the bank in the Probate Court. The administrator then claimed the amount of the deposit account from the bank, and we held that he could not recover; that the bank was a creditor of the estate, and might, as any other creditor, strike a balance and obtain an allowance for the amount appearing to be due, whether the estate was insolvent or not. There was no question in the case of the rights of holders of checks against the fund on deposit, who had presented them for payment. It was not pretended or suggested that there were any checks outstanding against the fund; and whatever the duties of the bank might be towards check-holders, they would not give the administrator any rights as against this fund. That the relations of the depositor and the bank are those of debtor and creditor is not inconsistent with the existence of additional obligations implied from the course of business between the parties, and which do not exist between debtor and creditor in an ordinary case.

*Mandeville* v. *Welch*, 5 Wheat. 286, was a case upon a bill of exchange, in which it was held that, unless such a bill be drawn against an entire specific fund, it is not, before acceptance, an assignment of the debt, " *unless,*" says Judge Story, delivering the opinion of the court, " *an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties, as a part of their contract.*"

Now, it is said by those who hold that the holder of the check can sue the bank, that the law raises an implied promise from the usage or course of business of the parties or of the general commercial community. And nothing is more certain than that the understanding is clear and uni-

versal in the business world that a check will be paid on presentment, if the funds are to the drawer's credit in bank. On the faith of this universal custom he deposits, and. on the faith of it his check passes freely from hand to hand. Such a usage of commerce will be sustained by the courts, unless intrinsically illegal.   The undertaking of the bank is that it will pay the depositor's check to the holder, if it has funds of the depositor to meet the check when presented; and this promise and agreement, if such a promise exists, enures, certainly, to the benefit of the holder of the check, and does away with any difficulty as to an alleged want of privity between the check-holder and the bank.   One for whose benefit a promise was made may sue on it, though not privy to the contract in which the promise was made. *Beardslee* v. *Morgner, ante,* p. 139.

The depositor can countermand the check up to the moment of presentment and demand, because, up to that moment, no obligation from the bank to the check-holder can exist, since checks are to be paid only in the order of presentment, not in the order of date.   The act of presentment and demand, by mercantile usage and the undertaking of all parties interested in the fund or in the check, creates the obligation to pay the check-holder, and is an absolute appropriation of the fund by the holder; as the mere drawing and delivery is, in some respects, an appropriation of the funds by the drawer, since the funds, after that, cannot be honestly withdrawn by the drawer, as a general thing, and ought to remain till called for.   4 Yerg. 210.   Though the bank could not pay if forbidden by the drawer, and circumstances may justify such countermanding of the check.

It is objected that the bank may, on this doctrine, be exposed to multiplicity of demands for the same debt, and that a claim cannot thus be split up.   So far as the danger to the bank goes, from a multiplicity of suits, it has never been disputed that the depositor himself might sue the bank in as many different suits for damages as there may be

checks unjustly dishonored; and the evil to the bank is the same, whatever be the name of the plaintiff. As to splitting the claim, the contract of the bank with the depositor is that the fund shall be paid out, in sums as demanded, on the depositor's written order. No doubt, if a depositor, for mere annoyance sake, should give checks merely for spite, that twenty suits might be brought for one debt, the courts would protect themselves and the debtor from such malicious annoyance.

It is our opinion that the holder of a check who presents it to the banker upon whom it is drawn, whilst the bank is in funds on account of the drawer of the check, can maintain his action against the bank. We think this is the better rule. We see no objection to it on principle, and we believe that a contrary rule would prove injurious to a class of securities which, of all, are the most necessary for the purposes of business and the commerce of the world.

It can hardly be necessary to say that, in this case, the claims of the bank against Fletcher not having matured, and putting those claims out of view, the bank having funds of the drawer much more than sufficient to pay this check when presented, there was no excuse whatever for the refusal to pay. It is well settled that if, before the demand of the party claiming set-off matures, the opposite claim has been assigned, whether the assignment carries the legal or only the equitable title, the right of set-off no longer exists. *Myers* v. *Davis*, 22 N. Y. 489.

The judgment of the Circuit Court is reversed, and the cause remanded, to be proceeded with in accordance with this opinion. All the judges concur.