State Savings Association, Respondent, *v.* Boatmen's Savings Bank, Appellant.

### December 13, 1881.

1. The holder of a check may maintain an action against the bank having funds of the drawer and failing to pay upon presentment and demand.

2. A bank has no lien upon, and cannot sequestrate, the deposit of a customer for the purpose of indemnifying the bank against a possible loss upon unmatured commercial paper of the customer discounted by the bank.

3. A bank which, through mistake, pays a check and places it upon the cancelling knife, is not thereby prevented from recovering upon it against the drawer.

4. Where a bank, a drawee, for the purpose of indemnifying itself against possible loss on the drawer's unmatured paper discounted by it, sequestrates the drawer's deposit and refuses to pay his check, that the checkholder does not sue on the check until after the drawee has adjusted its claim, in bankruptcy, against the drawer, does not estop the holder from recovering on the check against the drawee.

Appeal from the St. Louis Circuit Court, Thayer, J.
*Affirmed.*

Noble & Orrick and A. M. Gardner, for the appellant : A payee or indorser cannot maintain an action on an unaccepted check against drawee refusing payment. ''A check is a bill of exchange.''— *Ivory* v. *Bank of Missouri*, 43 Mo. 475. ''A check is under the same rules as a draft.''— *Moody* v. *Mack*, 43 Mo. 212 ; *Murray* v. *Judah*, 6 Cow. 484 ; *Hakres* v. *Anderson*, 21 Wend. 372 ; *Barnett* v. *Smith*, 10 Frost (N. H.), 256. The drawer of a check only is liable. — *Morrison* v. *McCartney*, 30 Mo. 188. The drawer is liable to the drawee for the act of not accepting.— *Adams* v. *Darby & Barksdale*, 28 Mo. 162. The payee cannot sue on an unaccepted draft. —*Clements* v. *Yeates*, 69 Mo. 623 ; *Kimball* v. *Donald*, 20 Mo. 577 ; *Ford* v. *Angelrodt*, 37 Mo. 57 ; *Bank of Commerce* v. *Bogy*, 44 Mo. 17 ; *Kneck's Administrator* v. *Savings Instn.*, 2 Mo. App. 563 (approved in *Union Bank of Quincy* v. *Tutt*, 5 Mo. 346). A check is not an assignment of the money deposited, or of the right to it.—*Dyken* v. *Leather Manufacturers' Bank*, 11 Paige, 616 ; *Dana* v. *Bank*, 13 Allen, 445 ; *Hancock* v. *Colyer*, 98 Mass. 247 ; *Chapman* v. *White*, 6 N. Y. 412 ; *Wharton* v. *Welker*, 4 Barn. & Cress. 163. The drawer of a check may at any time before payment countermand it, and there was such countermand in this case. — *McGrade* v. *Bank*, 4 Mo. App. 339. The defendant knew the insolvency of the debtor before presentation, and was bound to refuse to pay the check, under the bankrupt law.— *Fox* v. *Gardner*, 21 Wall. 475 ; *Bank of Commerce* v. *Russell*, 2 Dill. 217. The plaintiff acquiesced in the application by defendants of the deposits to the draft when it

matured, and this application resulted now in pecuniary loss to defendant, if plaintiff is allowed to recover. Such acquiescence amounts to an estoppel herein. Defendant's instructions on this point should have been given. — Big. on Estop. 477, 525; Herm. on Estop., sects. 320, 321, 323 *et seq.; Welland* v. *Hathaway*, 8 Wend. 480; *Lindell* v. *McLaughlin*, 30 Mo. 33; *Costello* v. *Meade*, 55 How. Pr. 356.

GLOVER & SHEPLEY, for the respondent: A cancellation of a check by mistake has no effect upon the right of recovery thereon. — *Rees* v. *Overbaugh*, 6 Cow. 748; *United States* v. *Spalding*, 2 Mason, 482; *Nevins* v. *DeGrand*, 15 Mass. 436; Add. on Con., sect. 391.

BAKEWELL, J., delivered the opinion of the court.

Plaintiff and defendant are banking corporations doing business in St. Louis. The action is upon two checks drawn upon defendant and held by plaintiff. The cause was tried by the court, a jury being waived. The finding and judgment were for plaintiff.

The following facts appear from the pleadings, evidence, and admissions on the trial. Cobb, Delhonde & Co. were depositors in the bank of plaintiff, and also in the bank of defendant. They drew the checks in suit, one for $623.42 to the order of Henry Ames & Co., and the second to bearer. These checks were drawn upon defendant. The persons to whom these checks were delivered by the maker, indorsed them, and presented them, about October 23, 1874, at the counter of plaintiff. The blank printed checks of Cobb, Delhonde & Co., upon the two banks, had a general similarity of appearance. The cashier of plaintiff carelessly supposed the checks were upon plaintiff's bank, and stuck them upon the cancelling knife, and they were by plaintiff's book-keeper charged to Cobb, Delhonde & Co., and credited to the parties by whom they were respectively presented. About October 31, 1874, the president of

plaintiff heard that Cobb, Delhonde & Co. were embarrassed, and directed an examination of their account. It appeared to be overdrawn, but examination showed that it was not overdrawn, but that the apparent overdraft was caused by the mistake as to these two checks, really drawn, not upon plaintiff, but upon defendant. On October 31, 1874, Cobb, Delhonde & Co. had at defendant's bank to their credit a sum more than sufficient to pay these checks; and defendant, at that date, held a draft made by one Bartley, and accepted by Cobb, Delhonde & Co., dated October 3, 1874, payable forty days after date, for $3,172. Defendants, on the same October 31st, received written notice from Cobb, Delhonde & Co. that they had suspended. On the same day, and after this notice, plaintiff's clerk presented the two checks in question to the president of defendant, explained how they came to be torn by the cancelling knife, and asked defendant to pay them. The president replied that he did not think they had the money. To this the clerk answered that he had just been informed by Delhonde's son, at the office, that the Boatmen's Savings Bank had more than enough to pay these checks. The president of defendant then said that they held paper of Cobb, Delhonde & Co., to mature; and on the part of defendant, he declined to pay the checks. However, as it was possible that Bartley might pay the draft which Cobb, Delhonde & Co. had accepted, and on which the defendant had advanced money, on November 5, 1874, defendant delivered to a third person, Mr. John R. Shepley, of counsel for plaintiff in this action, its cashier's check for the amount of these drafts, and received the checks in controversy; but all hope of payment of this draft being subsequently given up, the cashier's check was returned to defendant, and the checks in controversy were given back to plaintiff, about May 5, 1875, leaving the parties just as they were. Had the Cobb, Delhonde & Co. acceptance been paid, the check delivered to the

third person was, by agreement, to have been delivered to plaintiff.

Cobb, Delhonde & Co. were adjudicated bankrupts in the United States District Court at New Orleans, on March 23, 1875, on their petition filed January 8, 1875. The draft of Bartley was credited by defendant with the amount of the balance on open account in their favor, and defendant proved up in bankruptcy the difference only. The credit thus given was $688, being the entire balance of Cobb, Delhonde & Co. with defendant on the opening of its bank on October 31, 1874, the day the checks were presented. Defendant received a dividend on the balance only. Cobb, Delhonde & Co. were afterwards discharged in bankruptcy.

There was some attempt to show that the question of the liability of the defendant was, by agreement, left to John R. Shepley to determine. The trial court found that no such agreement was made, and no more need be said as to that.

The books of defendant show, and it is not disputed, that defendant, from the date of these checks until after their presentation, was in funds to pay them.

1. The accidental defacement of the checks by the holder, does not at all impair its right to recover. It would appear, therefore, that according to the doctrine announced by this court in *McGrade* v. *German Savings Institution* (4 Mo. App. 330), and in *Senter* v. *Bank* (7 Mo. App. 532), the judgment in this case ought not to be disturbed. Accordingly, we are asked to review the doctrine of those cases, and mainly, as we understand appellant's counsel, on the ground that we ought to follow the ruling of the supreme court of the United States on commercial questions, where the question is a vexed one and has not been passed upon by the supreme court of the state.

The decisions of respectable courts may be adduced for and against the proposition that the holder of a banker's check may maintain an action at law against the bank hav-

ing funds of the drawer where presentation has been duly made and payment demanded.   After careful consideration we have held that the action is maintainable.   To say that our conclusion is one against which strong reasons may not be urged, would be to say that the question is not a *vexata quæstio*.   But it is a *vexata quæstio*.   We shall neither examine it, nor discuss it, again.   I do not believe that the learned, able, and diligent counsel for appellant in the present case have suggested anything against the rule laid down by us in the cases just referred to, that was not urged before us, or that did not occur to the members then constituting this court, when those cases were under consideration.   The question is no longer an open one, so far as this court is concerned.

2. It is contended that the payment of the checks was countermanded by the drawer.   The only evidence to support this contention is contained in the following letter addressed by Cobb, Delhonde & Co. to defendant: " October 31, 1874.   Boatmen's Savings Bank, St. Louis. *Gentlemen:* We regret to advise you we are compelled to suspend.   This, we are aware, will be very unexpected to you, and until very recently, we ourselves had no apprehension of such a necessity ; but the heavy losses we have sustained in the recent shrinkage in the prices of provisions, holding, as we did, a large stock, and other losses, is the cause.   This and our New Orleans house will very shortly make a statement of their condition, and until then we ask your indulgence.   Respectfully, Cobb, Dolhonde & Co.   By F. Delhonde." This letter was manifestly not intended to be, and was not, in fact, any direction to defendants not to pay checks already given against the funds of Cobb, Delhonde & Co., in their hands.

3. But, it is urged, the United States bankrupt act (sect. 5073) provides that in case of mutual debts or mutual credits, the balance only shall be allowed or paid.

This deposit, it is true, was in the hands of defendant on January 8, 1875 ; but it was in their hands of their own wrong, and because they illegally refused to pay the check of their customer, and claimed to have a lien upon it on account of his paper discounted and held by them, and which had not yet matured. The petition in bankruptcy was not filed until more than two months after the presentation of this check. It was known that the parties to that paper were insolvent ; but it was not known that they would ever be forced into bankruptcy, or file a petition in bankruptcy. It cannot, we think, be held with any show of reason, that a banker might, whilst the bankrupt law was in force, have refused to pay his customers' checks as soon as he learned that they were embarrassed, on any ground of fear that the banker by so doing might possiby be making himself a party to an illegal preference. The right of plaintiff to this money was established on the day of the presentation of the check ; when the check was presented there was an equitable assignment of so much of the fund, which, we have no doubt, would have been recognized by the district courts of the United States administering the bankrupt act, as being as valid, in the absence of actual fraud, as if no bankrupt law had ever been passed.

Defendant did not refuse to pay these checks on any ground of possible doubt as to whether they might not perhaps have been defaced by the maker, nor because it required time to inquire as to this. Payment was refused on the distinctly illegal ground that defendant claimed a right to sequestrate the bank account of Cobb, Delhonde & Co. to apply upon an acceptance not yet due, and which might perhaps be dishonored. Then when the draft matured, without authority to do so, defendant credited the draft with the whole deposit account, and sets up, in this action, as a ground of defence, that it was induced to do so by the acts of plaintiff, and thereby lost the dividend which it would otherwise have collected from the estate of Cobb,

Delhonde & Co. in bankruptcy on the whole amount of of their draft. We see no evidence in the case, of any agreement or understanding that, if the Bartley draft was not paid and the cashier's check in consequence returned by the third person to whom it had been delivered to pay to plaintiff in case that draft was paid, then the plaintiff would make no further claim on defendant.\ It is true that plaintiff delayed bringing suit for three years, and it is possible that plaintiff might never have sued but for the decision of this court in the case of *McGrade* v. *German Savings Bank;* but plaintiff was under no obligation to hasten to bring suit lest perhaps defendant might decide a doubtful question of law in its own favor. There was some evidence tending to show that Mr. Shepley, as attorney for plaintiff, stated, on returning to defendant the cashier's check, that there was no further claim, and that the matter was at an end ; but this was contradicted, and, by giving defendant's instruction numbered six, the trial court showed that it found in favor of plaintiff, that no such declarations were made. In the absence of any such declaration, we see no evidence of anything in the conduct of plaintiff which ought to be taken as having wilfully misled defendant to his hurt, and the following instruction was, we think, properly refused : —

" 7. If the court finds from the evidence that upon the presentation by plaintiff of the checks in question and refusal by defendant to pay same, the defendant claimed the right to apply the deposit of Cobb, Dolhonde & Co. in the defendant's bank on the Bartley draft accepted by Cobb, Dolhonde & Co., and soon to become due, the said Cobb, Dolhonde & Co. then having suspended payment, as the parties knew, and thereupon, at the request of plaintiff, the defendant issued its cashier's check to J. R. Shepley for the amount of the checks in question, and received the checks in question with the understanding between the parties at the time that, if said draft and acceptance were not paid in due

time, the cashier's check should be returned by Mr. Shepley
to defendant, and the checks in question to plaintiff; that
said draft and acceptance were not so paid, and on request
the said cashier's check was returned by Mr. Shepley, with
the consent of plaintiff to defendant, who then and there
returned to Mr. Shepley for plaintiff the checks in question;
and it was then known to the plaintiff and Mr. Shepley
that defendant's object was to apply the amount of deposits
of Cobb, Dolhonde & Co. equal to said cashier's check as a
set-off on said unpaid draft and acceptance, and said de-
fendant did proceed to apply the amount aforesaid in part
payment of said acceptance, and the acceptors having been
adjudicated bankrupts, proved up the defendant's claim for
only the balance of said acceptance, and thereon only re-
ceived dividends, and said bankrupts have been duly dis-
charged, and plaintiff did not again assert its claim on the
checks in question against defendant until this suit was
brought, then the court declares the plaintiff acquiesced in
the appropriation of the said deposits by defendants under
its claim at the time made, and cannot maintain this
action.''

As to estoppel, the court found the facts against defend-
ant, and if there was no estoppel plaintiff was entitled to
recover on the undisputed facts, unless we are to reverse
the previous ruling of this court as to the right of a check-
holder to sue the bank on which the check was drawn.
The rule which was laid down by this court, after solemn ar-
gument and serious consideration, in a matter concerning
property rights, and which we adhered to, when, after the
lapse of some time, the same question was again presented,
was the warrant to plaintiff for commencing this action.   It
is possible that, as counsel for appellant insists, the opposite
rule is, after all, the better one.   As to this the courts of
this country are not agreed.   Judge THOMPSON was not a
member of this court when *McGrade* v. *German Savings
Institution* and *Senter* v. *Bank* were decided; but I am

authorized to say for him, that were the matter *res integra,* he would be for the rule laid down in those cases; and my own opinion in the matter, I may say, is unchanged. It is to be hoped that the question may, before long, be set at rest in Missouri by the supreme court; meanwhile it is our plain duty *stare deciso,* and we shall do so.

The judgment is affirmed. Judge LEWIS is absent; Judge THOMPSON concurs.