RIPLEY NATIONAL BANK, OF RIPLEY, OHIO, Respondent, v. W. A. LATIMER, Receiver, etc., Appellant.

Kansas City Court of Appeals, January 6, 1896.

1. **Evidence**: DEMURRER: PLACING LETTER IN MAIL. The depositing in the postoffice of a letter properly addressed and postage prepaid, is *prima facie* evidence that the addressee received it; and in this case there is sufficient evidence to submit that question to the jury.

2. **Banks and Banking**: RECEIVER: NEGLIGENCE. The receiver of a bank stands in its shoes and can no more avoid liability on account of its negligence than the bank itself could.

3. ———: CHECK: ACTION. If a bank holding a deposit on the presentation of a check wrongfully refuses payment, the holder has a right to sue the bank in *assumpsit* and the bank owes the depositor the duty to take up the check to the extent of the deposit.

4. ———: CUSTOM OF PRESENTING CHECKS. While the late custom between banks of presenting checks by mail is doubted, still the weight of authority is in its favor and the bank receiving such check should give notice of dishonor.

5. ———: PRESENTATION OF CHECK: AGENCY. A bank presenting a check to the drawee bank by mail makes the latter bank the former's agent, which, by retaining the check, accepts the agency and should remit the amount of the check or give notice of its dishonor.

6. ———: ———: ———: NEGLIGENCE. In this case the drawee bank is liable for the negligent conduct of its cashier, the drawer of the check, since his negligence is that of the bank.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Wm. S. Shirk* for appellant.

(1) The rule is positive, that in order to raise a presumption that a letter was received by mail, three things must be shown: *First.* That the letter was properly addressed. *Second.* That it was deposited in the United States postoffice, or in a mail box, or given to a mail carrier, or other mail agent of the United States. *Third.* That the necessary amount of postage was prepaid thereon. *Plath v. Ins. Co.*, 4 Minn. 379, on 484; *Briggs v. Harvey,* 130 Mass. 186; *Huntley v. Whittier*, 105 Mass. 391; 13 Am. and Eng. Encyclopedia of Law, bottom page 260, par. c.; *McFarland v. Ins. Co.*, 27 S. W. Rep. (s. c., Mo.) 436. Even if all this had been shown, the evidence of Latimer, receiver, was sufficient to rebut the presumption that the letter ever came into the possession of the bank. (2) It was gross negligence for plaintiff bank to send Thompson's check for collection, not only to the bank on which it was drawn, but to also place it in Thompson's own hands for collection. By so doing plaintiff bank voluntarily put it in the power of Thompson to conceal from the bank

the existence of said check, or that it was ever sent to it for collection, and must abide the consequences of its own foolishness, instead of throwing the consequences of said foolishness on the defendant bank. *Bank v. Bank*, 56 Fed. Rep. 967, and cases cited. (3) In such case, Thompson would be dealing with the bank in his individual interest, and the bank was not chargeable with his acts or knowledge. *Bank v. Lovett*, 114 Mo. 519; *Moores v. Bank*, 15 Fed. Rep. 141; *Benton v. Bank*, 26 S. W. Rep. 975; *Bank v. Tompkins*, 57 Fed. Rep. 20; *Bank v. Christopher*, 40 N. J. Law, 435.

*G. W. Barnett* for respondent.

(1) The evidence is ample to show that the letter containing the check in controversy was sent through the mail in the usual way to the First National Bank of Sedalia, Missouri. *Steam Co. v. Otis*, 100 N. Y. 446; *Thalhimer v. Brinkerhoff*, 6 Cowen, 101; *Miller v. Hackley*, 5 John, 375; *Lindenberger v. Beal*, 6 Wheat (U. S.), 104. The evidence of Latimer is not sufficient to rebut the presumption that the letter came into the possession of the bank. (2) Although it may have been negligence for plaintiff to send the check in question to the bank on which it was drawn and of which Thompson, the maker of the check, was cashier, yet this defendant can not take advantage of such negligence. Such bank can not take advantage of its own wrong or that of its cashier and business manager. (3) The cashier is the chief executive officer through whom the whole financial operations of the bank are conducted. His acts, within the scope of the general usage, practice, and course of business conducted by the bank, will bind the bank in favor of third persons. 2 Am. and Eng. Encyclopedia of Law, page 118, and authorities there cited. Mr. Thompson was not dealing with the bank

in his individual interest, but was acting for the bank as its cashier in the receipt of the check in question from plaintiff.

SMITH, P. J.—This is an action grounded on the negligence of the First National Bank of Sedalia of which the defendant is receiver. The petition stated:

"The said First National Bank is indebted to this plaintiff in the sum of one hundred and forty-five and 40–100 dollars, by reason of the following facts: That on the nineteenth day of October, 1893, one James C. Thompson, who was then the cashier of said First National Bank, was indebted to plaintiff, among other sums, in the sum of one hundred and forty-five dollars, and that, in payment of said sum, the said Thompson sent to plaintiff through the mail, the individual check of him, the said Thompson, drawn upon the said defendant, the said First National Bank of Sedalia, Missouri, directing said First National Bank to pay to this plaintiff the said sum of one hundred and forty-five dollars. That this plaintiff duly received said check and immediately, to wit, on the twenty-third day of October, 1893, transmitted said check to the said First National Bank for collection and return of proceeds to plaintiff. Plaintiff alleges that said First National Bank duly received and retained said check, but wholly failed to transmit said $145.40, or any part thereof to this plaintiff, and did not return said check to this plaintiff, neither did it protest said check for nonpayment, nor did it notify this plaintiff that said check was not paid, or that there were no funds of said Thompson in said First National Bank, with which to pay the same. Plaintiff alleges that said J. C. Thompson has since absconded from the state and has become wholly insolvent, so that plaintiff can not recover said amount

from him; that said amount could have been collected from said Thompson at the time same was received by the said First National Bank, and that if plaintiff had been notified that said check was not paid immediately or within due and proper time after said First National Bank received it, the same could have been collected by plaintiff from said Thompson," etc.

There was a trial resulting in judgment for plaintiff; from which judgment defendant has appealed.

The defendant here complains of the action of the court in refusing to declare, at the conclusion of the evidence, that the plaintiff was not entitled to recover. The defendant insists that there was no evidence adduced which tended to prove that the letter containing the check was deposited in the United States mail, or that it was correctly addressed, or that it had upon it the proper postage stamps; and that, therefore, no presumption could be indulged that the First National Bank received the plaintiff's letter by mail. By reference to the adjudications, it will be seen that the depositing in the postoffice of a letter properly addressed, with postage prepaid, is *prima facie* evidence that the person to whom it was addressed received it. *Bank v. Burns*, 12 Col. 539; *Briggs v. Harvey*, 130 Mass. 186; *Huntly v. Whittier*, 105 Mass. 391; Am. and Eng. Encyclopedia, p. 260, and cases cited in note 2.

The testimony of the assistant cashier of plaintiff bank was as follows:

"*Q.* State whether, and if so, about when a check executed by J. C. Thompson to the Ripley National Bank for $145.40 was received by said bank? *A.* Such a check was received about October 23, 1893, and was sent by mail to the First National Bank of Sedalia, Missouri, indorsed for collection and remittance to the Ripley National Bank of Ripley, Ohio.

"*Q.* Please examine this copy of a letter addressed

to J. C. Thompson, Cashier, Sedalia, Missouri, dated October 23, 1893, marked Exhibit "A," and state whether or not it is a copy of the letter taken from the letter book of the Ripley National Bank. *A.* I have examined the letter and find it to be a correct copy of the letter in the letter book.

"*Q.* How was the letter transmitted and in what kind of an envelope was it sent? *A.* It was sent in an envelope stamped return to the Ripley National Bank, Ripley, Ohio, if not delivered in ten days."

And that of the cashier, in addition, corroborating that of his assistant was, further, as follows: "*Q.* State whether or not the Ripley National Bank had any business transactions with said First National Bank of Sedalia, Missouri, prior to the transmission of this check, and whether such business was forwarded through the same channels and in the same manner as the check, and whether you ever lost or failed to hear of any papers previously sent them in the same manner. *A.* We had considerable business and correspondence with the First National Bank of Sedalia, Missouri, and it was all done by mail. All communications were sent by mail in the same manner that this letter was forwarded. We never lost or failed to hear of any letter sent them by mail previously."

This evidence, it seems to us, was sufficient to justify the inference that the letter was received by the officer of the bank to whom it was addressed. It was a question for the court trying the case without the aid of a jury to decide, whether the inference that the letter was received, founded upon the probability that the officers of the government will do their duty and that letters will be duly delivered, is overcome by the testimony of the receiver. We can not say, as a matter of law, that the receiver's testimony was sufficient to rebut the inference that the letter was received

by the cashier of the bank to whom it was addressed. This officer did not take charge of the bank until several months after the writing and depositing of the letter in the mail. The fact that he could not find the letter among those remaining in the bank when he took charge of it, does not conclusively rebut the inference that the letter was received by the officers of the bank in charge of it when the letter was mailed and ought to have been received. We can not resist the conclusion that the evidence was quite sufficient to justify the court in refusing the defendant's declaration of law.

The receiver stands in the shoes of the bank, and can no more avoid liability on account of the negligence of the bank, than the bank itself could have done. It would be strange indeed if the bank, or its receiver, could escape liability for negligence in refusing to present the check, or to cause the same to be protested, or to notify the plaintiff of nonpayment.

The case of *Bank v. Bank*, reported in 56 Fed. Rep. 967, is not similar to this. There the defendant bank had sent a certificate of deposit of which the plaintiff bank was the holder, to the makers, and this was declared to be negligence on the part of the transmitting bank, for which it was liable. Here the check was not an obligation of the bank to which it was sent. It was not certified by that bank. The receiving bank was not primarily liable on it. The case cited from 56 Federal Reporter, *ante*, is not like this, and the principle it announces finds no application to the facts here.

If the drawer had had on deposit with the bank money which the latter could have applied to the payment of the check when presented, then the bank would have owed him, upon an implied contract, the duty to honor and take up his checks to the extent of the funds deposited. If the bank holding a deposit subject to the

payment of a check on its presentation wrongfully refuses payment, the holder of the check has a right to sue the bank in an action of *assumpsit* upon the implied promise which the law raises in behalf of the holder of the check. *Zelle v. Savings Inst.*, 4 Mo. App. 401; *McGrade v. Savings Inst.*, 4 Mo. App. 330; *Sutter v. Bank*, 7 Mo. App. 532; *Lewis v. Bank*, 13 Mo. App. 204; *Sav. Ass'n v. Bank*, 11 Mo. App. 292. But in this case the drawer had no funds in the bank subject to the check in favor of the payee. The relation of the drawer to the bank was not that of depositor. The bank was not the agent of the drawer. It owed him no duty in respect to the check.

The ordinary method of forwarding a check for presentment, where it is negotiable at a distance from the place where the bank is situated, is by mail or express, to some third person or agent, who is charged with the duty of presenting it to the bank for payment. But the custom has grown up of late, of sending the check direct to the bank on which it is drawn, or, in other words, to make the presentment by mail. The sufficiency of this latter method has been doubted (*Farwell v. Curtiss*, 7 Biss. 162), but the weight of authority is probably in favor of its sufficiency. *Indig. v. Bank*, 80 N. Y. 101; Tiedeman, Com. Paper, sec. 444; Randolph, Com. Paper, sec. 1133, and cases there cited; Morse on Banking, sec. 236. Since sending the check by mail to the drawee bank was a sufficient presentation, it was the duty of the bank, as it was the holder of no fund out of which it could make payment, to give the plaintiff notice of dishonor. *Farwell v. Curtiss, ante;* Randolph on Com. Paper, sec. 1136; Bigelow, Notes and Bonds, 110.

In making presentment in this manner, the plaintiff made the drawee bank its agent. Randolph, Com. Paper, sec. 1133; *Bank v. Provision Co.*, 117 Ill. 100.

The bank to which the check was sent accepted the agency. It did not, as it probably might have done, decline such agency by promptly returning the check. As the relation of principal and agent existed between plaintiff and the bank on which the check was drawn, the latter owed the plaintiff the duty to either remit for the check when received, or if it had no funds of the drawee on deposit from which it could remit the amount of the check, then to dishonor such check, giving the plaintiff due notice thereof. If the bank to which the check was sent had given the plaintiff notice of the dishonor of such check, as was its duty to do, the plaintiff could then have recovered the amount of the check, in an action against the drawer, who was then, and for several months thereafter, solvent.

It seems to us that the action of the bank to which the check was sent, in holding the same and not notifying the plaintiff of its dishonor, was very gross negligence, for which it should be held liable to respond in damages to the plaintiff, to the full extent of its injury. The mere fact that the drawer was the cashier of the drawee bank, can not be held an excuse for the negligence complained of. He was the executive officer of the bank through whom the whole moneyed operations of the bank were transacted. He was entrusted with the funds of the bank and was held out to the public as having authority according to the general usage, practice, and course of business of such institutions. *Bank v. Hughes*, 62 Mo. App. 576. If the drawer of the check, who was cashier of the drawee bank, received such check, he received it for the bank, for it was sent to the bank, and not to him individually, and if he destroyed the check and refused to give notice of its dishonor to plaintiff, his acts were those of the bank. The bank can not, therefore, escape liability for the negligence of its cashier, since his negligence was that

of the bank.   It is of no moment that the acts of omission which constitute the negligence complained of were prompted by the knavish or fraudulent purposes of the cashier to subserve his own private ends.

The case of *Bank v. Swett*, 114 Mo. 519, has not the slightest application to a case like this, as will be seen by a perusal of it.   There is no fact bringing the latter within the principle declared in the former.

We discover no error in the action of the court in refusing the peremptory instruction asked by defendant.

The judgment is clearly for the right party and must be affirmed.   All concur.