THE COMMERCIAL INVESTMENT CO., RESPONDENT, v. THE CITIZENS STATE BANK OF PRATT, KANSAS, APPELLANT.—54 S. W. (2d) 424.

Kansas City Court of Appeals. November 21, 1932.

*H. G. Leedy, C. A. Leedy, Jr.* and *R. Bruce Noel* for respondent.

*Farrar & Phillips, R. F. Chick and M. C. Bucklin* for appellant.

CAMPBELL, C.—Plaintiff seeks to recover on four checks drawn on the defendant bank by Harland Lunt, under the trade name of Lunt Sales Agency. Upon trial to the court, without the aid of jury, plaintiff obtained judgment for the sum of $3,193.16. Defendant has appealed.

The pleaded defense is that when defendant received the checks the drawer thereof did not have sufficient funds on deposit with it to pay them; that in accordance with the practice of defendant, known and approved by plaintiff, it retained the checks for collection; that the checks were not paid or collected and that by error or mistake the amount of the checks was included in drafts remitted by it to the Commerce Trust Company; that defendant did not have the proceeds of the checks for remittance and that the drafts remitted to the Commerce Trust Company were issued "by error on the part of one" of defendant's employees; that upon discovering the error, defendant stopped payment of the drafts.

The plaintiff requested the court to make findings of fact separately from its conclusions of law. The defendant also made a like request. In compliance with the request the court made findings of fact, the material parts of which read:

"That one Harland Lunt, doing business as 'Lunt Sales Agency, at Pratt, Kansas, made, executed and delivered his certain checks, drawn on defendant bank, payable to the order of plaintiff, numbered, for sums, and on dates, as follows:

"Check No. 206, for $940, dated March 1, 1929 (sued on in Count 1 of plaintiff's petition). Check No. 214, for $650, dated March 6, 1929 (sued on in Count IV of plaintiff's petition). Check No. 226, for $650, dated March 9, 1929 (sued on in Count III of plaintiff's petition).

"That said Harland Lunt further made, executed and delivered his certain check, drawn on defendant bank, numbered No. 220, for the sum of $580, dated March 8, 1929 (sued on in Count II of plaintiff's petition), payable to the order of one Don Rosser, which check was thereafter, by said Don Rosser duly endorsed in bank,

and was, for a valuable consideration, delivered to plaintiff on or about March 11, 1929.

"That the aforesaid checks numbered No. 214, No. 220 and No. 226 were received by plaintiff on or about March 11, 1929, and check numbered No. 206 was received by plaintiff on or about March 12, 1929; that thereafter plaintiff duly endorsed and delivered all of said checks to First National Bank of Denver, Colorado, as its agent to forward, through usual channels, for collection; that said First National Bank selected Commerce Trust Company of Kansas City, Mo., as sub-agent of plaintiff to collect said checks.

"That thereafter said First National Bank forwarded said checks, by mail, to said Commerce Trust Company for said purpose of collection, on the dates, respectively, as follows: Checks numbered No. 214, No. 220 and No. 226, on March 11, 1929, and check numbered 206 on March 12, 1929; that upon receipt of said checks by said Commerce Trust Company, it in turn selected defendant bank, the drawee thereof, as a sub-agent to collect said checks from itself, and on March 12th and 13th, 1929, forwarded said checks by mail, in what is commonly known as 'cash letters' to defendant for the aforesaid purpose of collection, and to remit the proceeds thereof to said Commerce Trust Company; that the aforesaid checks numbered No. 214, No. 220 and No. 226, being, respectively, for the sums of $650, $580 and $650, were contained in one of said cash letters, and constituted the only items contained therein, which cash letter was so forwarded by said Commerce Trust Company on March 12, 1929; that the aforesaid check numbered No. 206, being for the sum of $940, was contained in the other of said cash letters, and was so forwarded on March 13, 1929; that the latter cash letter contained other items for collection, aggregating in all $2,391.15.

"That said cash letters, and each of them, contained directions as follows: 'Wire non-payment of items Five Hundred Dollars and over, giving name of our endorser.'

"That said cash letters, and each of them, were received by defendant bank on Thursday, March 14, 1929; that on Friday, March 15, the day after said cash letters were received by defendant, the maker of said checks, Harland Lunt, had in said bank, in his account, a credit balance in excess of $10,000.

"That two days after said cash letters were received by defendant, to-wit, on Saturday, March 16, 1929, defendant, through its assistant cashier, who ordinarily and regularly, as a part of his duties, issued drafts in remittance for cash letters, issued two drafts in remittance for said Lunt checks, and the other collection items contained in one of said cash letters, which drafts were dated March 16, 1929, and were for the sums, respectively, $1,880 (representing items of

$650, $580 and $650), and $2,391.15 (representing the $940 item, and other checks), both drawn on Inter-State National Bank, Kansas City, Mo., payable to the order of Commerce Trust Company; that said drafts were forwarded, by mail, to Commerce Trust Company in an envelope with a copy of the cash letters in payment of which said drafts were issued.

"That after said cash letters were received by defendant, and before the sending of the telegrams and the latter hereinafter referred to in this paragraph, the maker of said checks, Harland Lunt, disappeared from Pratt, Kansas, and his home and business, and his whereabouts became unknown; that during said time, knowledge of his said disappearance came to defendant, and it thereupon, to-wit, on Monday, March 18, 1929, by telegrams and letters, notified Commerce Trust Company that payment on the aforesaid drafts on Inter-State National Bank had been stopped, and on said date, defendant returned to Commerce Trust Company the four checks in question:

"That Commerce Trust Company presented said remittance drafts to Inter-State National Bank for payment, it being the drawee thereof, and payment on said drafts was refused because defendant had stopped payment thereon; that thereafter defendant remitted to Commerce Trust Company the amount of the other items, exclusive of the Lunt check for $940, contained in the cash letter for $2,391.15;

"That defendant has never paid the amount of its remittance drafts issued in payment of the Lunt items, aggregating $2,820."

An examination of the record discloses that the findings of fact are supported by substantial evidence.

In its assignments of error, the defendant does not claim error in the findings of fact but assigns that error was committed in giving and in refusing conclusions of law. Defendant's main insistance is that conclusion of law No. 1 is erroneous. By conclusion of law No. 1 the court held that the evidence of Mr. Hardesty, president of the defendant bank, to the effect that upon receipt of the checks by the defendant he ordered its cashier and assistant cashier not to pay the checks "unless Mr. Lunt brought the money in, he didn't have sufficient funds, was inadmissible. The evidence referred to was admitted by the court over the objections of the plaintiff. The plaintiff objected to the evidence upon the ground that it was hearsay. The objection was overruled and the evidence admitted. The defendant says that the evidence was not hearsay, was a verbal act, a part of the transaction and, hence, admissible as tending to show that the drafts were issued through mistake or error. Reliance for this contention is based on the principle announced in the case of State to Use v. Mason, 112 Mo. 374, and cases in harmony therewith.

In the Mason case it was held that the plaintiff was entitled to

testify to a statement made *by him* with reference to an item of $3500, which was included in a settlement and which he claimed was included therein by mistake. The rule there announced is not applicable here. The asistant cashier, who had general authority to issue drafts, was not called as a witness and though the president did direct him not to issue the drafts, such direction was no evidence that the drafts were issued by mistake or error.

The cashier who issued the drafts was the only person who knew whether the drafts were issued by mistake. Clearly the evidence was hearsay and immaterial. [Kregain v. Blake, 239 S. W. 495; McFarland v. Bishop, 222 S. W. 143; Austin-Western Road Machinery Co. v. Commercial State Bank, 255 S. W. 585.]

"A corporation cannot introduce in evidence the unsworn declaration in its favor of one of its officers, whether such declaration be oral or in writing, and even though it is in the form of a resolution of the board of directors." [22 C. J. 229.] Manifestly, were it competent for defendant's president to testify to declarations made by him to other officers of the bank, it would be permissible to prove by third persons that the declarations were made.

But we do not put our holding on that ground alone. The drafts were issued in the state of Kansas by defendant, a banking corporation organized and existing under the law of that state. The law of Kansas was not pleaded nor proven, and we may therefore not take judicial notice of the statutory law of that state. Shout v. Gunite, 41 S. W. (2d) 629.

In the absence of statutory regulation, the cashier of a bank "is considered the executive officer of the bank through whom the whole moneyed operations of the bank in paying or securing debts or disposing, or transferring securities are conducted." [Bank v. Hughes, 62 Mo. App. 581; Bank v. Bank, 244 Mo. 554, 577.]

There was no showing that under the law of Kansas the president of defendant had power or authority to control the actions of the cashier with reference to issuing drafts of the bank.

Moreover, the defendant in its assignments of error does not claim that the court erred in its findings of fact, nor could it well do so.

The trial judge found that on the day after the checks were received by the defendant and while the defendant was holding them "Harland Lunt had in said bank, in his account, a credit balance in excess of $10,000;" that on the second day after the checks were received by the defendant its assistant cashier "who ordinarily and regularly, as a part of his duties, issued two drafts in remittance for said Lunt checks" and other collection items in the cash letters; that the drafts were forwarded by mail to the Commerce Trust Company; that the cash letters contained direction to wire nonpayment of items

"$500 and over." The defendant retained the checks for two days before issuing the drafts and did not advise the Commerce Trust Company of the nonpayment of the checks. Upon receiving and retaining the checks and issuing the drafts therefor, the defendant, as a matter of law, accepted the checks and became liable to plaintiff for the amount thereof. [Ripley National Bank v. Latimer, 64 Mo. App. 321, 329; Cohen v. First National Bank, 198 Pac. 122; Oddie v. National City Bank, 45 N. Y. 735; Bull v. Novice State Bank, 250 S. W. 232; First National Bank v. Devenish, 25 Pac. 177.]

In the circumstances the issuance of the drafts, as a matter of law, was an acceptance of the checks and closed the transaction. Authority *supra*.

The defendant contends that the deposit of $10,500 to the account of Harland Lunt on March 15, was a special deposit. The records of the bank revealed that the deposit was made at the time stated. Defendant's president, Mr. Hardesty, testified that the deposit was made for the purpose of paying checks other than those here involved which the bank then held. The value of that explanation, however, was for the trial judge. He could believe the evidence or he could disbelieve it and his finding on that question will not be disturbed on appeal. [Buford v. Moore, 177 S. W. 865; Thompson v. Royal Neighbors of America, 154 Mo. App. 146.]

The other assignments of error are immaterial for the reason that upon the facts found by the trial judge, the plaintiff was undoubtedly entitled to the judgment which it obtained.

It follows that error, if any, in the conclusions of law given and in the conclusions of law refused, are of no consequence. The judgment is affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.