Chew v. Ellingwood.

---

CHEW et al. v. ELLINGWOOD et al., *Appellants.*

1.  **Bond**: BANK : BOOK-KEEPER, DEFALCATION OF.   The fact that the
     book-keeper of a bank has, with the consent of its cashier, taken
     its money not due him and applied it to his own use, will not relieve

Chew v. Ellingwood.

either the book-keeper or his sureties from liability in an action on his bond which contained a provision that he would truly account for all moneys belonging to the bank, and apply its funds to their proper uses.

2. ———— : ————. The bond was given for the benefit of the stockholders and creditors of the bank, and the fact that the cashier knew of or connived at the book-keeper's defalcation can constitute no defence.

3. **Bank Directors, Negligence of.** Nor would the negligence of the directors, whereby they failed to discover the defalcation of the book-keeper, constitute a defence to an action on the bond.

4. ———— : DIRECTORS, ASSIGNMENT BY FOR BENEFIT OF CREDITORS. Where there is nothing in the charter or general laws of the state forbidding it, the directors of an insolvent bank have the right to make an assignment for the benefit of its creditors.

*Appeal from Buchanan Circuit Court.*—Hon. G. D. BURGESS, Judge.

AFFIRMED.

*Silas Woodson, Crosby & Rusk* and *James P. Thomas* for appellants Ellingwood and Bailey.

(1) The court below should have permitted appellants, Ellingwood and Bailey, to file the amended answer. R. S., 1879, sec. 3567, p. 610 ; *Wellman v. Dismukes*, 42 Mo. 101.   (2) The board of directors, without a vote of stockholders authorizing it, had no power to transfer the entire assets of the bank, including the unpaid capital stock, thereby putting it out of the power of the corporation to carry on the business or accomplish the purpose for which it was created.   *Rollins v. Clay*, 33 Me. 139 ; *Abbott v. American Hard Rubber Co.*, 33 Barbour, 579 ; *Hartford & N. H. Ry. Co. v. Crosswell*, 5 Hill, 383 ; *Buford v. Keokuk N. L. Co.*, 3 Mo. App. 166 ; *Price v. St. Louis Mutual Life Ins. Co.*, 3 Mo. App. 262 ; *Atlantic & Pacific Ry. Co. v. City of St. Louis*, 66 Mo. 247 (subhead "Corporation Deeds.")   (3) The knowledge of the secretary or cashier, as he was styled after 1872, pertain-

ing to the business of the institution under his management and control, was knowledge of the bank. *Bank of America v. McNeil*, 10 Bush, 59; *Harrisburg Bank v. Tyler*, 3 Watts and Sergeant, 376. (4) In the transaction and management of its business, the secretary or cashier was the bank—the corporation itself—and his acts are its acts. *Bissell v. First National Bank*, 69 Pa. St. 415; *Bank of Kentucky v. Schuylkill Bank*, 1 Par.'s Selected Cases, 180; *Merchant's Bank v. State Bank*, 10 Wallace, 604, and authorities there cited; *Caldwell v. The National Mohawk Valley Bank*, 64 Barb. 340; *Wakefield Bank v. Truesdell*, 55 Barbour, 604; *Lloyd v. The West Branch Bank*, 15 Pa. St. 172. (5) The directors are presumed to know, and are bound by the facts known to the cashier, or that are shown upon the face of the books of the bank, and are bound by a line of conduct that they have suffered the cashier to pursue for years without objection. *New Hope & Delaware Bridge Co. v. Phœnix Bank*, 3 N. Y. 156; *Bank of America v. McNeil*, 10 Bush (Ky.) 59; *Caldwell v. National Mohawk Valley Bank*, 64 Barbour, 342; *The City Bank of New Haven v. Perkins*, 4 Bosworth, 441–444; *United Society of Shakers v. Underwood*, 9 Bush (Ky.) 621. (6) From the third, fourth and fifth points, as applied to the facts in this case, it follows that the relation of debtor and creditor existed between Riley and the bank, hence, no liability attaches on the bond. *Jones v. Biggs*, 1 Jones' Law (N. C.) 364. (7) This action cannot be maintained in the name, or for the benefit of T. J. Chew, Jr., and A. C. Craig, because they are the sureties on the bond of John Williams as cashier, and as such are liable for the amount of Riley's overdrafts, by reason of the failure of Williams to report such overdrafts to the board. The transfer of the assets of the bank to Chew and Craig was without consideration and is void, the court had no authority to sanction or approve such transfer, and its order to that effect has no

validity. The effect of the transaction was to make the Buchanan bank pay off and discharge the liability of Chew and Craig on the cashier's bond, at the expense of the stockholders, without their consent or knowledge. (8) Williams, by virtue of his office as cashier, had the superintendence of the books of accounts of the bank. Morse on Banks and Banking (2 Ed.) 156. (9) The bond is to be strictly construed as against the sureties; their liability cannot be extended by construction or doubtful implication. *Taylor v. Parker*, 43 Wis. 81; *Blair v. Perpetual Ins. Co.*, 10 Mo. 566; *Nolley v. Callaway County Court*, 11 Mo. 463; *City of St. Louis v. Sickles*, 52 Mo. 126; *Home Savings Bank v. Traube*, 75 Mo. 199. (10) The operative force and effect of the words used in the condition of the bond is limited and restricted by the recital of the bond. *The National Mechanic's Banking Association v. Conkling*, 90 N. Y. 116. (11) The "money, property and funds" of the company, referred to in the condition of the bond, are such as came into the principal's hands, or were received by him by virtue of his office or employment as book-keeper. Brandt on Sur. and Guar., sec. 451; *People of N. Y. v. Pennock*, 60 N. Y. 423; *Nolley v. Callaway County Court*, 11 Mo. 463; *City of St. Louis v. Sickles*, 52 Mo. 126. (12) The court may disregard the conclusions and inferences drawn by the referee and render such judgment as the facts that are found by the referee and supported by the evidence will warrant. *Moniteau National Bank v. Miller*, 73 Mo. 187. (13) The failure to appoint a successor to Mr. Riley, as book-keeper, in 1869, when Mr. Hoagland was elected president, and Mr. Williams secretary, by the board, terminated the liability of the appellants as sureties on Mr. Riley's bond as effectually as if the board had at the same time appointed another person to succeed Mr. Riley as book-keeper.

*B. R. Vineyard* for respondents.

(1)  The report of a referee is equivalent to the special verdict of a jury, which will not be disturbed if there is any evidence to support it, and this court will not consider the weight of the evidence in such cases.  *Western, etc., Association v. Kribben*, 48 Mo. 41 ; *Gimbel v. Pignero*, 62 Mo. 242 ; *Wiggins Ferry Co. v. Ry. Co.*, 73 Mo. 419 ; *Frantz v. Dietrick*, 49 Mo. 95 ; *Brooks v. West*, 3 Mo. App. 581, at bottom ; *Woods v. Mo., etc., Co.*, 3 Mo. App. 602.  (2)  Where there is nothing in the charter or general statutes prohibiting it, the directors of any corporation in failing circumstances may make a general assignment for it for the benefit of its creditors, without first obtaining the sanction of its stockholders to do so.  *Shultz v. Sutter*, 3 Mo. App. 137 ; *Dana v. Bank of U. S.*, 5 W. and S. 223 ; *DeCamp v. Alward*, 52 Ind. 468 : *Cotton v. Eagle Bank*, 6 Conn. 233 ; *Town v. Bank*, 2 Dougl. (Mich.) 530 ; *Union Bank v. Ellicott*, 6 Gill & J. 363 ; *State of Maryland v. Bank of Md.*, 6 Gill & J. 206 ; *DeRuyter v. St. Peter's Church*, 3 Barb. ch. 119, 124 ; s. c. affirmed, 3 N. Y. 238 ; *Lenox v. Roberts*, 2 Wheat. 373 ; Burrill on Assignments, sec. 64 ; Angell & Ames on Corp., sec. 191 ; *Hurlbut v. Carter*, 21 Barb. 221, 224 ; *Ringo v. Real Estate Bank*, 13 Ark. 563 ; *McCallie v. Walton*, 37 Ga. 612 ; *Flint v. Clinton Co.*, 12 N. H. 435 ; *Gilson v. Golthwaite*, 7 Ala. 281. (3) The sureties are joint obligors with the principal on the bond and are alike bound with him.  *Pittsburgh v. Shaeffer*, 59 Pa. St. 357 ; *Engler v. Ins. Co.*, 46 Md. 322 ; *The Home Sav. Bk. v. Traube*, 75 Mo. 202. (4) While the bond did not define the trust reposed in Riley, it indicated the department of duty to be assigned to him, and guaranteed that the appointee was a trustworthy person to be introduced into the bank to dis-

charge that duty. *Rochester Bk. v. Elwood*, 21 N. Y. 91; *German Bk. v. Auth*, 87 Pa. St. 419; *Engler v. Ins. Co.*, 46 Md. 322; Angell & Ames on Corp., sec. 319; *Hart v. Pittsburgh, etc.*, 81 Pa. St. 466. (5) Riley did not "well and truly and faithfully perform all his duties" in making false monthly statements of the affairs of the bank, for the use of the directors, by reason of which they were kept in ignorance of its true condition, and in not informing the board of his overdrafts, and those of Williams, and in so keeping his books that such overdrafts were not discovered. *Nat. Bk. v. Drake*, 20 Kas. 328. (6) The only way one owing money to another can "account for it" in law is to pay it. *State ex rel. v. Williams*, 77 Mo. 463; *State ex rel. v. Colman*, 73 Mo. 685; *State ex rel. v. Steele*, 21 Ind. 207. (7) The directors had no power to permit Riley to overdraw his account, much less did Williams, the cashier, possess such power. *Market Street Bank v. Stumpe*, 2 Mo. App. 545. Nor had Williams any power to release any part of any claim due the bank. *Davis Co. Sav. Ass'n v. Sailor*, 63 Mo. 24. In fact, no officer or agent of a bank possesses any power to confer authority on any other agent to perpetrate a wrong on the bank. Brandt on Suretyship, sec. 474; *Nat. Bk. v. Drake*, 29 Kas. 328; *Minor v. Bank*, 1 Pet. 46; Morse on Banking. (8) It is no defence that the directors were guilty of negligence in failing to discover before the assignment that Williams and Riley had for a series of years been improperly taking the bank's money. *Pittsburgh v. Shaeffer*, 59 Pa. St. 357; *State, etc., v. Atherton*, 40 Mo. 216; *Minor v. Bank*, 1 Pet. 46; *Market Street Bank v. Stumpe*, 2 Mo. App. 545; *Taylor v. Bank*, 2 J. J. Marsh. 564; *Hart v. Pittsburgh*, 81 Pa. St. 466; *United States v. Kirkpatrick*, 9 Wheat. 720.

NORTON, J.—This suit is founded on the following bond: "Know all men by these presents that we,

Samuel J. Riley, as principal, and J. W. Bailey, J. L. Ellingwood and M. D. Morgan, as securities, are held and firmly bound unto the Buchanan Life and General Insurance Company, in the sum of five thousand dollars, for the payment of which, well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, jointly and severally, firmly by these presents, sealed with our seals, and dated this second day of July, 1867. The condition of the above bond is such that whereas the said Samuel J. Riley has been elected, and still is, book-keeper in, of and for the said Buchanan Life and General Insurance Company. Now, if the said Samuel J. Riley shall well and truly and faithfully perform all his duties as such book-keeper, so long as he may continue to serve as such, for the present year, and for all time to come, whenever re-elected, and shall well and truly account for all money and property belonging to said insurance company, or which may pass through his hands, by virtue of his said office, during his service as such book-keeper, and apply the funds of said company to their proper uses and purposes, then this bond to be null and void ; otherwise, to remain in full force.

"[Signed.]

| | |
|---|---|
| "Samuel J. Riley, | (Seal.) |
| "J. W. Bailey, | (Seal.) |
| "J. L. Ellingwood, | (Seal.) |
| "M. D. Morgan. | (Seal.)" |

Among the other breaches of the bond assigned are the following, to-wit: The said Riley did not well, or truly, or faithfully perform all his duties as such book-keeper of said company during the time covered by said bond, from July 2, 1867, to January 15, 1873, nor did he during said time well or truly account for all money belonging to said company, nor did he during said time apply the funds of said company to their proper uses and purposes, in this : During the time of his service as such

book-keeper as aforesaid, from July 2, 1867, to January 15, 1873, and within ten years next before the bringing of this suit, he, the said Riley, wrongfully took out of and from said company and bank, and appropriate to his own use large sums of money belonging to said company, whereby the same were wholly lost to said corporation, which sums so taken and appropriated by said Riley, and so lost to said corporation, together with the dates of such takings, conversions, and appropriation and loss, are of the amounts and dates as stated in the following itemized account thereof, and the balance thereof due said corporation, after allowing all proper credits to which the same is entitled, amounts in the aggregate, to $3,814\frac{27}{100}$, no part of which has ever been paid to said company or bank.

The defendants, by answer, put in issue the averments of the petition, and set up that all the money that came to the hands of Riley that was used by him was borrowed of the company in the usual course of business with said company. The new matter set up was denied by replication, and, by agreement, the cause was referred to Franklin Porter, as referee, to report on the facts.

Various exceptions were taken to the report of the referee, which were overruled, the report confirmed, and judgment entered in favor of plaintiffs, from which the defendants have appealed. And the controlling question in the case is, whether under the terms of the bond and the facts found by the referee, the defendants were or not liable.

Among other things found by the referee in his report, was that it was the duty of Riley, as book-keeper, to "refrain from taking from said company any money not then due him." That defendant Riley's desk, as book-keeper, was kept inside the counter of said bank, and twelve or fourteen feet therefrom: During the day the money of the bank was kept upon said counter, and

said Riley, by virtue of his position as said book-keeper, had access to said moneys, and when the teller was busy at the counter, said Riley frequently assisted him in receiving and paying out money. The employes of said company and bank, including said book-keeper, received their salaries in this way: The amount of the salary was credited to each on the company's books upon the last business day of each month, and they took the money themselves from the cash counter as they desired it, leaving memoranda of the charges to be made therefor upon the check files. Defendant Riley did that way all the time, and drew no checks upon the bank. Whenever he "wanted money he went and took it, leaving a memorandum of the amount taken upon the check files." All of which manner of taking money Mr. Williams knew, and did not object thereto. That between the date of said bond and January 15, 1873 (which was the date of the new bond given by said Riley as book-keeper), said account of Samuel J. Riley shows that from day to day, or at intervals of a few days, said Riley continuously, during all the time covered by the bond in suit, drew out and took of the moneys of said insurance company and bank, for his own use, many sums of money, in varying amounts, aggregating the sum of $9,590.26; and during the same period credited himself from time to time with the amount of his salary on the last business day of each month, and, also, with the amounts of twelve different deposits made by him at different times (the sum of said deposits being $1,065.78). The aggregate of all said credits so shown was the sum of $6,699.10, which, deducted from the amounts taken by him as aforesaid, leaves as the amount of money so taken by him, over and above all credits, between said dates, the sum of $2,291.16. That the directors knew nothing of the existence of overdrafts by defendant Riley until the day before the bank made an assignment for the benefit of its creditors.

This report of the referee stands as a special verdict, and if there was evidence tending to establish the facts found, this court will not disturb the finding. *Wiggins Ferry Co. v. Chicago & Alton Ry. Co.*, 73 Mo. 389 ; 48 Mo. 37 ; 49 Mo. 95.

It appears that there were no by-laws of the company prescribing the duties of book-keeper, and the referee was, therefore, left to ascertain what his duties were from the evidence before him ; and the fact found by him that it was the duty of the book-keeper to refrain from taking from said company any money not due him is abundantly sustained by the evidence of Williams, Goff and Sayle, all of whom professed to be acquainted with the duties of a book-keeper in a bank.

Mr. Sayle, who had experience as a book-keeper in a bank, testified as follows : "I am acquainted with the duties of a bank book-keeper. In the absence of any by-law or regulation on the subject of overdrafts, neither the book-keeper nor any other person has any right to overdraw his account in the bank, and it would be a violation, in my opinion, of the book-keeper's duties to do so. If the book-keeper of a bank has a custom of taking from the cash counter sums of money whenever he wants them, and in this way draws out more money than he has in the bank, and more than his salary amounts to, he violates his duty as such book-keeper. The duties of officers in banks vary more or less in different banks, as provided by the by-laws. My testimony referred to the duties of a book-keeper in the absence of by-laws. In the absence of a provision in the by-laws, no officer of a bank has a right to permit an overdraft, and if he does so he is personally responsible for it, that is, the officer permitting the overdraft."

While the evidence of these witnesses proved the fact above found by the referee, the bond, by its plain terms, imposed upon Riley the obligation to well, truly and faithfully perform all his duties as such book-keeper,

to well and truly account for all money and property belonging to said company, or which might pass through his hands by virtue of his office, and apply the funds of said company to their proper uses and purposes. The referee found as facts that Riley did not refrain from taking money from the bank not due him, but, on the contrary, that he did take large sums not due; that Riley did not account for all money and property belonging to the bank, nor apply the funds thereof to their proper uses and purposes, but, on the contrary, that he took large sums of money which he applied to his own uses and purposes. It thus appears that every condition of the bond was broken by Riley.

While the evidence shows, and the referee so finds, that the employes of the bank were credited at the end of each month with the amount of their salaries, and that they took the money themselves from the cash counter, as they desired it, leaving memoranda of the charges to be made therefor upon the check files, and that defendant Riley did that way all the time, but drew no checks on the bank, and that Williams, the cashier, knew of this manner of their taking money and did not object thereto, it also shows that while Williams had knowledge that Riley's account was overdrawn four or five hundred dollars, that he never consented for him to overdraw his account at all. We have been cited to a number of authorities by counsel to establish the principle that the liability of sureties cannot be extended by construction or doubtful implication. While the principle invoked is elementary law, it is equally true that a bond should be so construed as not to eliminate, but to give effect to all the provisions it contains. The bond in question was taken for the benefit and protection of the stockholders and creditors of the company, and it provided, among other things, that Riley should well, truly and faithfully perform all the duties of book-keeper. As to what such a condition im-

plies, the following authorities will show. In the case of *Railroad Co. v. Shaeffer*, 59 Pa. St. 357, Sharswood, J., in speaking of a bond containing such a condition, says that "the sureties, by executing the bond, became responsible for the fidelity of their principal. It is no collateral engagement into which they enter, dependent on some contingency or condition different from the engagement of their principal. * * * The fact that there were other unfaithful officers * * * who knew and connived at his infidelity ought not, in reason, and does not, in law or equity, relieve them from their responsibility for him. They undertake that he shall be honest, though all around him are rogues. Were the rule different, by a conspiracy between the officers of a bank or other moneyed institution, all their sureties might be discharged. It is impossible that a doctrine leading to such results can be sound. In a suit by a bank against a surety on the cashier's bond, a plea that the cashier's defalcation was known to and connived at by the officers of the bank, was held to be no defence." *Vide Taylor v. Bank of Kentucky*, 2 J. J. Marshall, 564.

So, also, it is said in case of *Rochester City Bank v. Elwood*, 21 N. Y. 94: "I cannot doubt that the covenant that Gold should faithfully discharge the trust reposed in him as assistant book-keeper, included within its scope and intention an engagement that the employe would not transcend the limits of the trust reposed, in availing himself of his position to misapply or embezzle the funds of his employer. There has not been a faithful discharge of the trust reposed in a book-keeper of a bank, who transcends the limits of and abuses his trust, and loss thereby ensues to the employer." See, also, *German Bank v. Auth*, 87 Pa. St. 419; *Engler v. People's Fire Insurance Co.*, 46 Md. 322. Under the above authorities, if Williams, the cashier, had knowledge of the fact that Riley was taking money of the bank not ·

due him, and applying it to his own use, and consented to it, such knowledge and consent could not have the effect of relieving either Riley or his securities from the liability of their undertaking, that Riley would truly account for all money belonging to the bank, and apply its funds to their proper uses, any more than a debtor of the bank to whom Williams might have surrendered the note of such debtor without payment, and as a gift, would be relieved from its payment.

In the case of *Daviess County Savings Association v. Sailor et al.*, 63 Mo. 24, it is held that the general duties of the cashier are to collect the notes and keep the funds arising from them, and deliver up notes when paid, and his representations made to a surety, that he will no longer be looked to for payment, will not bind the bank, nor will the bank be estopped from asserting its claim by reason of such assurance. That no officer or agent of a bank has power to confer authority on any other agent to perpetrate a wrong on the bank is established by the following authorities: Brandt on Suretyship, sec. 474; *National Bank v. Drake*, 29 Kas. 328; *Minor v. Mechanic's Bank*, 1 Peters, 46.

Neither can the defendants claim exemption from liability on their bond on the ground that the directors were negligent in not ascertaining the fact, till the day before the assignment was made, that Riley had been applying to his own use more money of the bank than was due him. Upon this branch of the case, the following observations made in the case of *State to use, etc., v. Atherton*, 40 Mo. 216, are appropriate, viz.: "We cannot accede to the first proposition of counsel for defendant, that he is exonerated by reason of the negligence of the cashier and directors of the bank in failing to make frequent examinations of the affairs of the bank, to count the money, inspect the books, and generally watch over its concerns. The principle contended for would have the effect to deprive a corporation of all

remedy against one agent on account of the negligence or default of another. The cashier might excuse himself by pleading the failure of the directors to perform their duty, and the directors would excuse themselves by showing that the cashier had been guilty of neglect, and omitted to execute the trust devolved upon him.'' See, also, *Minor v. Mechanic's Bank, supra; Market Street Bank v. Stumpe,* 2 Mo. App. 545 ; 2 J. J. Marshall, 564 ; 81 Pa. St. 466 ; *United States v. Kirkpatrick,* 9 Wheat. 720.

The point made by appellants' counsel, that the assignment made by the directors is void, must be ruled against them. The right of the directors of a bank in failing circumstances to make an assignment for the benefit of creditors, where there is nothing in the charter or general laws forbidding it, we think, is clear. See authorities under this head cited in respondent's brief. While, in the case of *Eppright v. Nickerson,* 78 Mo. 482, an intimation is made that the stockholders might question such right, it was expressly held that such assignment would be valid as against everybody else. Many of the authorities cited go to the extent of saying that under such circumstances the directors not only have the right, but that, in justice, they ought to make an assignment so that creditors might share equally in its assets. Indeed, under constitution and laws which make it a felony for directors and officers of a bank to receive deposits, knowing it to be in failing circumstances, it would seem to leave them no other alternative but to close its doors and make an assignment for the benefit of its creditors.

We have no doubt of the right of these plaintiffs to maintain this suit, and perceive no error in the record justifying an interference with the judgment. It is hereby affirmed. All concur except Henry and Sherwood, JJ.

HENRY, C. J., DISSENTING.—There is no evidence tending to prove that the bank's books were not kept correctly by the book-keeper, precisely as they had been kept ever since the organization of the company, except in one item, wherein the book-keeper took credit to himself twice for the same amount, about five hundred dollars. The evidence proved, and so the referee found, that an examination of these books at any time would have disclosed the true condition of the bank, except as to the above item. The book in which individual deposit accounts were kept would not have shown the overdrafts made, either by the book-keeper or other customers of the bank, but other books kept by him in connection with that, would, and this was the system of book-keeping adopted and sanctioned by the bank, and there was no breach of his bond in thus keeping the books, although not the most approved method.

There is no pretense that the book-keeper ever used any money belonging to the bank, except such as he obtained by means of overdrafts, and that he was habitually overdrawing his account was known and consented to by the cashier. True, he says he did not consent to it, but, knowing it, and it being his duty, and in his power to stop it, he is to be taken to have acquiesced and consented to the overdrafts made by the book-keeper, and the bank is as much bound by it as if the cashier, standing in its stead, and as to such transactions to be regarded as the bank itself, had been expressly authorized by the board of directors to allow such overdrafts to be made by the book-keeper.

Nor does it help plaintiff's case that the cashier, aware that the book-keeper was making over-drafts, did not know the extent to which he was overdrawing his account. He could easily have ascertained, and, therefore, tacitly consented to any amount of overdraft he

might make. The book-keeper, as to those transactions, was a customer of the bank. By its acquiescence he became its debtor, and it subsequently accepted and enforced a deed of trust executed by the book-keeper to secure the indebtedness thus contracted, and cannot hold his securities as for an embezzlement by the book-keeper of the amount of such indebtedness. DeColyar on Securities, 434, and cases cited. The obligation of the securities was to the bank, which had the right to permit their principal to overdraw his account, and thus become the debtor of the bank, but it cannot hold his securities for the failure of their principal to pay money so borrowed. They did not undertake as his securities for money borrowed by him, and even conceding that the bond is as broad as claimed, and bound the securities for thefts or embezzlements committed by their principal, the evidence establishes against the book-keeper no element of theft or embezzlement, but only that, with the consent of the cashier, he borrowed money from the bank.

The referee found that the bond obligated Riley to refrain from taking any money from said company, not due him. If this means that he obligated himself not to steal or embezzle the money of the bank, it may be conceded that the bond has that effect, but if it is meant by that finding that he obligated himself never, even with the consent of the bank, to overdraw his account or otherwise borrow money of the bank, there is nothing in the bond to warrant the finding. The cashier of a bank is the agent of the corporation. *Bissell v. First National Bank*, 69 Pa. St. 419; *Caldwell v. The National Mohawk Valley Bank*, 64 Barb. 333. "The bank will also be bound by the acts of the cashier, if the directors, either through inattention, or otherwise, suffer the cashier to pursue a particular line of conduct for a considerable period, without objection." *Ib.* "He is the general manager, and unless his operations are re-

stricted by the directors, he is, for many purposes, looked upon by the law, and is treated as if he was, the whole body, whom he has power to bind, even by his tortious act." Grant on Banking, 518. "The cashier is the financial officer of the bank, and his agreements in behalf of his principal, in all matters relating to its business of discounting and banking are binding upon it, to the same extent as if made by a resolution of the board of directors." *Wakefield Bank v. Truesdell*, 55 Barb. 603. Directors will not be heard to say that they were ignorant of facts, "the existence of which is shown by the ledgers, books, accounts, correspondence, etc., of the bank, and which would have come to their knowledge but for gross neglect or inattention." *United Society of Shakers v. Underwood et al.*, 9 Bush. 611. De Colyar, in his work on Guaranties and Principal and Surety, at page 434, says : "It also appears that where one gives security for the conduct of another in a certain office, which brings him in contact with other persons also in the office, he has a right to expect that these persons will, in all things affecting the surety, conduct themselves according to law and discharge their duties." This is the precise language of Lord Brougham in *Mactaggart v. Watson*, 3 C. & F. 525.

The same doctrine is recognized in *Meir v. Hardie*, 5 Shaw & Dunlop, 346, and in the *People v. Janson*, 7 Johns. 332, it is said : "The security had a right to look to the provisions of this statute, and to calculate his liability on the presumption that the duties enjoined on these public officers would be faithfully and punctually discharged.   *   *   *   There can be no doubt that the plaintiffs are chargeable with the consequences of the neglect, or breach of duty of their agents or public officers intrusted with this business."

The book-keeper in the case at bar, as to those overdrafts, stood as a debtor to the bank, the same as the numerous other depositors with the bank, whose ac-

counts were overdrawn. Can it make any difference that, instead of using a formal check, he drew the money on tickets, which, though not in form, were in substance checks, and this with the knowledge and ac- quiescence of the cashier?

I think that the judgment should be reversed and the cause remanded, or that a judgment should be entered in this court for the sum for which the book- keeper twice took credit to himself, with interest from the date of that transaction.