HUTCHINSON *et al.*, *Appellants*, v. GREEN *et al.*

1. **Fraud.** The charge in the petition in this case that the defendants, who were directors of a corporation, combined to destroy its property and business, and in furtherance of that design made an assignment of its property; *held*, on a review of the facts to be disproved by the evidence.

2. **Corporation;** ASSIGNMENT FOR BENEFIT OF CREDITORS BY THE DIRECTORS. It is the duty of the directors of a corporation to care for its creditors, and when it becomes embarrassed and unable to meet its obligations in the usual course of business, it is competent for the directors to make an assignment for the benefit of creditors, and this they may do, not only without the consent, but even against the expressed will of the stockholders.

3. ———— : ————. Where there is no restriction in the statute, articles of association, or by-laws, as to the disposition of the property of the corporation by the directors, the latter and they alone are the proper parties to make the assignment.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Broadhead & Haeussler, E. T. Allen* and *Given Campbell* for appellants.

(1) The directors of a corporation have not the power to make an assignment of its property for the benefit of creditors, without the consent, or against the will, of its stockholders. *City of St. Louis v. St. Louis Gas Light Co.*, 70 Mo. 98; *Eppright v. Nickerson*, 78 Mo. 482; Field on Corporations, sect. 151; *Buford v. Keokuk N. L. Pkt. Co.*, 3 Mo. App. 159; s. c., 69 Mo. 611. (2) If the board of directors had the power, without a vote of the stockholders, to make an assignment of the property of the corporation for the benefit of creditors, the action of the board in this case was fraudulent and void. "No point is better established

than that a person having a power, must execute it *bona fide* for the end designed, otherwise it is corrupt and void." 1 White and Tudor's Lead. Cas. in Eq. (4 Am. Ed.) 573, at page 577. The controlling purpose of the four directors, who voted for the assignment, while representing less than one-tenth of the stock of the company, was to prevent the incoming board, who should represent the great majority of the stock, from controlling the affairs of the corporation. Such purpose made the assignment void. *Mahony Min. Co. v. Bennett*, 5 Sawyer, 141; *Railroad v. Railroad*, 50 N. H. 175; *Farwell v. Houghton Copper Works*, 8 Fed. Rep. 66. (3) Even if there was no complicity on the part of defendant, Green, the assignee, in the fraud of Gray, Ward, Griffith, and Hill, still, if damages resulted to the corporation from the fraudulent assignment, judgment for such damages should have been entered against them, though the petition might have been dismissed as against Green. R. S., secs. 948, 949, 950. (4) Green, the assignee, knew of the frauds of his co-defendants; or, acting blindly in an important business affair, so acquiesced in their fraud as to be equally liable with them for the damages which the corporation sustained by reason of the assignment. Messrs. Madill & Taussig, Green's attorneys, were also the attorneys of Gray, Ward, Griffith, and Hill. Their knowledge of the fraudulent purpose of Gray, Ward, Griffith, and Hill, in making the assignment is imputable to Green. *Rogers v. Palmer*, 102 U. S. 263. (5) Whether Green, the assignee, knew of the fraudulent purpose of his co-defendants in making the assignment, is, in one view of the case, immaterial. The assignment, at the time this suit was brought, was inchoate only. There had not been a delivery of the property to the assignee. At the date of the assignment, the property of the corporation was not in its possession, or subject to its control, but was in charge of a receiver of the court, and such parts

of it as had not been sold by the receiver to pay his expenses, or under orders of the court to satisfy lien claims, still remained in charge of the receiver, when this suit was brought. (6) The testimony shows that, at the date of the assignment, the corporation owned property worth from fifty to one hundred thousand dollars more than its total liabilities. Two days before the assignment, Green, as auctioneer, sold seventy-five hundred and ten shares of its stock at eight dollars per share. This indicated a value of assets of (7510x8) $60,080, at least, over all liabilities. Such excess of assets thus brought home to the knowledge of Green is: ( a ) Conclusive proof of the fraudulent purpose of the directors. ( b ) Conclusive proof of Green's complicity in their fraud; and ( c ) A starting point for estimating the damages to the corporation by reason of the assignment. (7) The damages resulting to the corporation by reason of the assignment are measured by the difference between the value of the assets at the time the assignment was made and the value now, less the amount in the hands of the receiver, and less the amount of debts canceled by sale of property under the deeds of trust and attachments. (8) The plaintiffs, as stockholders, can maintain this suit for the benefit of the corporation. ( a ) Defect of parties, or of the legal capacity of parties plaintiff to sue, must be taken advantage of, if at all, by demurrer or answer. R. S., secs. 3515, 3519 ; *Horstkotte v. Meiner*, 50 Mo. 159 ; *Dunn v. Railroad*, 68 Mo. 268. There was no demurrer, and no such objection was made in the answers filed by the defendants. ( b ) The corporation asked leave, with consent of plaintiffs, to be substituted as plaintiff in this cause. The defendants objected, and the court sustained the objection. Plaintiffs excepted to this action of the court. For this reason defendants, Gray, Ward, Griffith, Hill, and Green, are estopped to claim incapacity in plaintiffs to maintain this suit, on

the ground that the corporation should have instituted and prosecuted it. (c) Under the circumstances of this case, it was the clear right of these plaintiffs to institute and prosecute this case. The existing board of directors, while admitting that the defendants had committed a fraud upon the corporation in making the assignment, and caused it great loss, neglected and refused to bring a suit to redress the wrong. This clearly brings the case within the rule laid down in *Dodge v. Woolsey*, 18 Howard, 331. (d) In this state the capacity of a stockholder to sue, in such a case as this, is given by express provision of the statutes. R. S., secs. 948 and 950; see second and sixth clauses of sec. 948.

*James Taussig, C. S. Taussig* and *G. A. Madill* for respondents.

(1) The plaintiffs, as stockholders, cannot maintain this action in their own name, even though they had shown, which they failed to do, that the corporation refused to bring the suit. *Hawes v. Oakland*, 104 U. S. 450; *McDougall v. Gardener*, L. R. 1 Ch. Div. 21; Morawetz on Corp., secs. 384, 385, 394, 395; *Woolsey v. Dodge*, 18 Harr. 341; *Hamilton v. Desjardin Canal Co.*, 1 Grant's Chancery & App. Rep. [Upper Canada] 27; *McMurray v. Railroad*, 22 Grant's Chancery Rep. [Upper Canada] 476, at p. 503; *Dannemeyer v. Coleman*, 8 Sawyer, 51; *Foss v. Harbottle*, 2 Hare, 461, 495; *Boston v. Brewer*, 104 Mass. 378, 386. (2) The corporation had the power to make a general assignment for the benefit of all its creditors. Ang. & Ames on Corp. [11 Ed.] p. 168, sec. 187; *Town v. Bank*, 2 Doug. [Mich.] 530; Burrill on Assignments [4 Ed.] sec. 64; Hill on Trustees [Am. Ed.] 73; *Shultz v. Sutter*, 3 Mo. App. 137; *Shockley v. Fisher*, 75 Mo. 498; *Lionberger v. Bank*, 10 Mo. App. 499; *DeRuyter v. Trustees*, 3 Barb. Ch. R. 119. And such assignment could be made by the board of directors without the consent of the stock-

holders. *Buell v. Buckingham*, 16 Ia. 284; *Ex parte Conway*, 4 Ark. 302, 354; *Montgomery v. Bank*, 1 S. & M. Ch. R. 684; *Shultz v. Sutter*, 3 Mo. App. 137; *DeCamp v. Alward*, 52 Ind. 468–473; *Sargent v. Webster*, 13 Metc. [Mass.] 497; *Union Bank of Tennessee v. Allicott*, 6 Gill & Johns. 363–371; *Dana v. Bank*, 5 Watts & Serg. 223; *Pope v. Brandon*, 2 Stew. [Ala.] 401; *Ardisco Oil Co. v. North American Oil Co.*, 66 Pa. 375. And such an assignment may be made by a bare quorum of the board. Burrill on Assign. [4 Ed.] sec. 64; *Buell v. Buckingham*, 16 Ia. 284; *Sargent v. Webster*, 13 Metc. 497. And is valid though the stockholder objects. *Montgomery v. Bank*, 1 S. & M. Ch. Rep. 632; *Ex parte Conway*, 4 Ark. 302, p. 355. It is only to such sales of property as are pronounced *ultra vires* by the law, that the stockholder can object (*e. g.*, the case of *Abbot v. American Hard Rubber Company*, 33 Barb. 578, which the court, at page 584, is especially careful to distinguish from an assignment for the benefit of creditors). The distinction between a case which presents an act *ultra vires* and void, and a case which presents an act clearly within the powers of the board of directors (*e. g.*, as a general assignment for the benefit of creditors), is clearly presented in the case at bar, and they differ "*toto coelo.*" *Sheldon Hat Blocking Co. v. Eickmeyer Hat Blocking Co.*, 56 How. Pr. Rep. 70; s. c., 90 N. Y. 607, where the court, for the purposes of the decision in that tribunal, concedes, but refuses to hold, the act complained of to be *ultra vires*. (3) A corporation, or person, who cannot meet its, or his, liabilities as they mature is insolvent, although he may have assets in excess of his liabilities. *Swan v. Robinson*, 5 Fed. Rep. 287, 294; *Merch. Nat'l Bank v. Cook*, 95 U. S. 342, 346; *Wagner v. Hall*, 16 Wall. 584, 601; *Dutcher v. Wright*, 94 U. S. 553; *Buchanan v. Smith*, 16 Wall. 277, 302; Bump on Fraud. Convey. 364, 365. Even a solvent debtor may make an assignment for the benefit

of his creditors. *Ogden v. Peters*, 21 N. Y. 24; *Ex parte Conway*, 4 Ark. 371; Bump Fraud. Convey. 362. (4) To render an assignment invalid on the ground of fraud the assignee must be a party to the fraud. *Seymour v. Wilson*, 19 N. Y. 417; *Purson v. Tom*, 1 Tex. 577; Bump on Fraud. Convey. [3 Ed.] 360–362. (5) If the assignment in this case were to be treated as void, then, as no title passed to the assignee, and he has never, in fact, had, or interfered with, the possession of any of the property of the corporation, no damages were proven, and none can be recovered against any of the defendants in this case.

BLACK, J.—This case is an outgrowth of *Ward v. Davidson*, 89 Mo. 445. By the decree rendered in that case, certain directors of the Keokuk Northern Line Packet Company were removed from office. Thereafter, and at a special election held on the seventeenth of November, 1880, pursuant to the order of the circuit court, four directors were elected to fill the unexpired term of the removed directors. There had been a disagreement of long standing between the officers and stockholders as to the management of the affairs of the company, which resulted in two parties, one known as the Davidson, or majority, party, and the other as the Gray, or minority, party; the removed directors were of the former. By cumulative voting at the special election the minority party elected a sufficient number of directors to give them a majority in the board for the time being. On the fifteenth of January, 1881, and four days before the annual election of directors, notice of which had been given, the board resolved to, and did, make a voluntary assignment of all of the property of the company for the benefit of all of the creditors. At the annual election the majority party again acquired the ascendency in the boad, and the plaintiffs then, for themselves and other stockholders, brought this suit

against the directors who voted for the assignment. They allege that the defendants combined to destroy the property and business of the corporation, and in furtherance thereof made the assignment, and pray that the deed of assignment be set aside for the alleged fraud, for other equitable relief, and for damages.

The defendants, in making the assignment, acted in part, at least, upon a report made by a committee appointed to examine into the affairs of the company. That report clearly enough shows that the company was unable to pay its debts in the usual course of business. But the correctness of that report was then, and is now, denied. The new board caused another report to be made, by a new committee, in which the debts are placed at $161,944.07, and in this respect the two reports are not materially different. In the last, the effects are valued at $234,229.35; thus leaving a surplus over liabilities of $72,285.62. No account is taken of capital stock, amounting to seven hundred and fifty one thousand dollars, paid in full. The evidence as to the value of the assets is conflicting and unsatisfactory; many of the witnesses having but little knowledge of the property about which they testified. In the last report warehouses are placed at $47,197.87, and cash and bills receivable appear to be estimated at nine or ten thousand dollars. The evidence shows that the warehouses were poor affairs, scattered along the river from St. Louis to St. Paul, on property not owned by the company, and were of no greater value than eighteen thousand dollars. The bills receivable were of little value, and the company had no money on hand worthy of mention. The best steamboats, barges, and wharfboats were mortgaged to at least forty-seven thousand dollars. Some of the boats and barges were wrecks, all were out of repair, and to put them in repair would require an outlay of forty thousand dollars. New boats and barges were required to carry on the former business of the company.

The loss in business for 1880 had been sixty thousand dollars. Suits were pending against the company for large amounts. These plaintiffs and those acting in concert with them had, at the date of the assignment, suits against the company amounting to ninety thousand dollars, some commenced in foreign jurisdictions by attachment. From the evidence, as a whole, we conclude the entire property of the company was not worth more than one hundred and ninety thousand dollars under the most favorable circumstances, and as a means of raising ready money, it was not equal to the debts. In short, it is clear the corporation was insolvent, and wholly unprepared to enter the spring trade.

On the other hand, the defendants, as directors, voted for and caused the assignment to be made in opposition to the known and expressed will of a majority of the stockholders. They knew their power to control the affairs of the corporation must cease at the coming election, only four days distant. They also agreed among themselves to make the assignment before presenting the matter openly at a meeting of the directors, and then they had a deed previously prepared, with a notary public at hand to take the acknowledgment as soon as the resolution should be passed. Any inference of fraud which might be drawn from these circumstances, if they stood alone, is overcome by the other facts in the case; for the defendants knew that the affairs of the corporation were growing from bad to worse. They saw the efforts of the plaintiffs, and those acting with them, to appropriate the property of the company to the payment of their debts, in disregard of the other creditors. Enough has been said to show that the Packet Company was in no condition to prosecute its business—was insolvent. Under these circumstances, the directors, having a due regard for the creditors in general, could not do otherwise than make an assignment.

The alleged fraud, we conclude, is not proved, but clearly disproved.

It is further insisted that the board of directors had no power to make the assignment without the consent of the stockholders. A corporation may, like an individual, make an assignment under the statute of this state relating to voluntary assignments. *Shockley v. Fisher*, 75 Mo. 498. By whom, then, is the power to be exercised? By the directors, the stockholders, or by both? Where the powers of a corporation are vested in a board of directors, they may, unless restricted, do whatever the corporation might. Field on Corp., secs. 146 and 152. Now, while, by express statute, a vote of the stockholders of these corporations is essential to enable them to increase or diminish the stock, to change the business, to issue preferred stock, and to convert bonds into stocks, still, in general, article 8, of chapter 21, Revised Statutes, contemplates that the business will be conducted by a board of directors. Section 930, among other things, provides that "the property or business of the corporation shall be conducted and managed by directors." Certain it is there is nothing in the statute under which this corporation was created, and by which it is governed, or in its articles of association, or bylaws, which limits or restricts the powers of the directors in the disposition of the property. The corporation then has the power to make an assignment, and that power being vested in the directors without restriction, it must follow that they, and they alone, are authorized to make it. It is the duty of the directors to care for the creditors, and when the corporation becomes crippled and unable to meet its obligations in the usual course of business, it is competent for the directors to make an assignment, and this they may do without the consent of the stockholders. This conclusion has the support of adjudications of this and other courts. *Chew v. Ellingwood*, 86 Mo. 260; *Dana v. The Bank of the*

*United States,* 5 W. & S. (Pa.) 223 ; *DeCamp v. Alward,* 52 Ind. 473. The directors may, with propriety, consult with the stockholders, but under the circumstances just stated, and in the exercise of their best judgment, they may make the assignment even against the expressed will of the stockholders. Of the cases relied upon by the appellants, that of *Abbott v. American Hard Rubber Co.,* 33 Barb, 580, was not an assignment for the benefit of creditors. There the trustees attempted, through the form of a sale, to secure to themselves the property of the corporation at the expense of the other stockholders. The sale was voidable, as to the stockholders not consenting, though a majority agreed to the transaction.

No question of the validity of a voluntary assignment of an insolvent corporation, made for the benefit of the creditors, was involved in the case. The same may be said of *Northern Railroad v. Concord Railroad,* 50 N. H. 175, for there the purpose of the contract, brought in question, was to transfer the management of the affairs of one company to the other for a period of five years. The assignment was upheld in *Eppright v. Nickerson,* 78 Mo. 482, though the stockholders did not authorize or assent to it. In that case the assignment was not assailed by any stockholder, and the court, by way of concession, made some remarks which seem to imply that consent, on the part of the stockholders, is essential to give validity to an assignment as against them, but as to these remarks, enough was said in *Chew v. Ellingwood, supra.*

The judgment in this case is, therefore, affirmed. Henry, C. J., absent ; the other judges concur.