PEOPLE'S SAVING BANK, Appellant, v. WILLIAM R. HUGHES, Respondent.

Kansas City Court of Appeals, May 20, 1895.

1. **Banks and Banking**: MANAGEMENT: POWERS OF CASHIER. Banking institutions, under article 7, chapter 42, Revised Statutes, 1889, are managed by a board of directors, and the cashier is considered the executive officer of the bank, through whom the paying or receiving of debts or disposing and transferring of securities are conducted. And his acts, in the ordinary course of business confided to him, are *prima facie* within the scope of his authority.

2. ——: ——: ——. A cashier, without special authority, has no power to discharge a surety on a note without payment. And an instruction implying such power is condemned.

3. ——: PLEADING: ISSUE. From the pleadings the issue made is, whether the defendant had been released by a certain agreement, and not whether a certain deed of trust had been delivered as collateral security, and this case is thus distinguished from *Bank v. Bartle*, 114 Mo. 280.

*Appeal from the Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED AND REMANDED.

*Sheetz & Wait* for appellant.

(1) The court erred in admitting any evidence of any agreement to release defendant Hughes if he would get the debt secured. Because the cashier of plaintiff had no authority to release any security of plaintiff. *Bank v. Hart*, 55 N. W. Rep. 631; *Bank v. Sailor*, 63 Mo. 24; *Chew v. Ellingwood*, 86 Mo. 262; Brandt on Suretyship, sec. 474; Story on Agency, secs. 114, 115; *Minor v. Bank*, 1 Peters, 46; *Bank v. Haskell*, 12 Am. Rep. 67; *Bank v. Dunn*, 6 Peters, 51. And the princi-

pal is never estopped from inquiry into the authority of the agent. *Bank v. Gay*, 63 Mo. 33; *Fogue v. Burges*, 71 Mo. 389. And because there was no consideration for any such agreement. (2) The court erred in giving the second instruction on behalf of the defendant. Because, whatever Hughes did was to protect himself and was without consideration, and what he was bound to do when he signed the original note. This instruction is misleading. If, as we contend, this was but collateral security, then the bank was obliged to do nothing, and its only obligation would have arisen upon the receipt of some proceeds of the collateral security which, when received, must be applied on this note. Until then they had no duty to perform toward defendant. *Taylor Co. v. Smith*, 52 Mo. App. 351; *Insurance Co. v. Landis*, 50 Mo. App. 116; *English v. Seibert*, 49 Mo. App. 563.

*J. B. Hale* and *Virgil Conkling* for respondent.

(1) Evidence of the agreement made by the cashier to release the defendant was properly admitted. *First.* Because a bank cashier, as a matter of law, has authority to make all agreements in the ordinary course of business. And his acts so done are *prima facie* evidence that they fall within the scope of his duty. *Donnell v. Bank*, 80 Mo. 165. *Second.* The cashier is the chief executive officer, through whom the whole financial operations of the bank are conducted. *Bank v. Bank*, 10 Wall. 604; *Caldwell v. Bank*, 64 Barb (N. Y.), 333; *Bissell v. Bank*, 69 Pa. St. 415; *Bridenbecker v. Lowell*, 32 Barb. (N. Y.) 9. *Third.* His acts, within the scope of the general usage, practice, and course of business, will bind the bank in favor of third persons possessing no other knowledge. *Lloyd v. Bank*, 15 Pa.

St. 172; *Minor v. Bank*, 1 Pet. (U. S.) 46, 70; *Bank v. Truesdell*, 55 Barb. 602; *Bank v. Bank, supra; Case v. Bank*, 100 U. S. 446, 454; *Cooke v. Bank*, 52 N. Y. 96. *Fourth.* And, if the bank retains the security, it ratifies the agreement of the cashier in obtaining it, even though the cashier exceeded his authority. *Paxton v. Bank*, 21 Neb. 621, 59 Am. Rep. 852; *Holmes v. Board of Trade*, 81 Mo. 137; 1 Beach on Private Corporations, sec. 197. *Fifth.* Also, if, as a result of the release agreement, defendant failed to secure himself from loss, plaintiff is estopped to deny the validity of the agreement, and defendant is released. *Driskell v. Mateer*, 31 Mo. 325; *Bank v. Lillard*, 55 Mo. App. 675; *Triplett v. Randolph*, 46 Mo. App. 569. (2) The second instruction for defendant was properly given. None of the objections of appellant are well taken. The bank officer had authority to make the agreement. And, even upon the theory of plaintiff, which is that the Mobray note and mortgage was merely collateral security taken to protect defendant, the law imposed upon plaintiff a duty which it failed to perform. Counsel for appellant are mistaken in saying, "The bank was obliged to do nothing," and that it "had no duty to perform toward defendant." It was plaintiff's duty to make the security available. This duty it owed to the surety, and, failing in it, the surety will be discharged. *Bank v. Bartle*, 114 Mo. 280; *Taylor v. Jeter*, 23 Mo. 250; *Casey v. Gunn*, 29 Mo. App. 25; *Burley v. Hitt*, 54 Mo. App. 275.

SMITH, P. J.—The petition of plaintiff contains two counts, the first of which is on a promisory note, alleged to have been executed and delivered to plaintiff by defendant, with Ervin A. Flora, George Abel and Sophia Flora, for $350, dated October, 1888, and payable four months after date; and in the second of

which it is alleged that the defendant, with the other of the above named parties, executed and delivered to plaintiff a certain other promissory note, of date February 1, 1888, for $350, payable four months after date; that on June 1, 1888, the note last aforesaid was surrendered to Ervin A. Flora and a renewal note was executed and delivered to plaintiff for a like amount, purporting to have been signed by the parties heretofore mentioned; that on the maturity of which last described note, the same was surrendered to said Ervin A. Flora, and a renewal note executed for a like amount, purporting to be also signed by the parties heretofore named; that the said last described note was in renewal of that described in the first count; that defendant Hughes had not signed either of said renewal notes. It was further alleged that the said note of February 1, 1888, had never been paid, except by the acceptance of said renewal note; that said last mentioned note was surrendered to said Flora only on the belief that said renewal notes were signed with the genuine signatures of the parties thereto, and that if said signatures or any of them were forgeries, that said original note had been fraudulently obtained from plaintiff and had never been legally discharged, etc.

The answer put in issue the execution by defendant of the note described in the first count, and as to the second, it alleged that, as soon as it came to defendant's knowledge that the plaintiff had accepted said renewal note, he notified it that he had not signed said note and that his name thereon was a forgery; that plaintiff thereupon admitted said note to be a forgery and solicited the defendant to aid and assist it in getting the same secured, and proposed to defendant that, if he would so aid and assist it, it would release defendant from further liability; that the defendant accepted the plaintiff's proposition and thereupon, through his

solicitation, one George Flora, brother of said Ervin A. Flora, for the purpose of securing said note, did transfer to plaintiff a certain note made by J. B. Mobray and others for $325, which last named note was secured by a deed of trust covering a certain property; that the said note so transferred was accepted by plaintiff, under said agreement, etc.

The answer is a very clumsily and inartistically drawn pleading. It is quite deficient in clearness and conciseness. It contains numerous superfluous allegations, which tend to obscure rather than render clear its meaning. But, laying all these aside, we think there is enough remaining to show that the intention of the pleader was to plead a release, under an agreement for that purpose.

The replication contained a general denial. There was a trial and judgment for defendant, to reverse the latter of which the plaintiff has appealed. A great number of questions have been discussed in the briefs of counsel, but we shall only notice such of these as we think are decisive of the present case.

In support of the affirmative defense pleaded by the answer, the defendant was permitted, over the objection of the plaintiff, to testify that after the discovery of the forgery of the renewal notes, the defendant and cashier of the plaintiff entered into a parol agreement, by which the plaintiff's cashier promised defendant that if the latter would induce Flora, the principal in said notes, to secure the last renewal note, the former would release the latter from his obligation incurred to the plaintiff by reason of joining as security the other parties in the execution of the note of February 1, 1888, which, it appears, was surrendered by plaintiff to Flora on receipt of the note on which defendant's name had been forged. The ground of the plaintiff's objection to the defendant's testimony just

referred to is, that it does not appear therefrom that it was within the power of plaintiff's cashier to release the defendant from his liability to the plaintiff.

The plaintiff is a banking corporation, created and existing under the provisions of article 7 chapter 42, Revised Statutes. That article conferred upon it the power to conduct the business of receiving of money on deposit and allowing interest thereon; to buy and sell exchange, gold, silver, coin of all kinds and uncurrent money; loan money upon real and personal property and upon collateral securities; buy, sell and discount negotiable and nonnegotiable paper, etc. R. S., sec. 2745. It further provides that the affairs and business of any corporation, authorized under it, shall be managed by a board of directors; R. S., sec. 2748. It is therein further provided that the board of directors may appoint and remove a cashier or other employee at pleasure. R. S., sec. 2759.

The powers and duties of the cashier are nowhere specified in the statute. The cashier of a bank is held out to the public as having authority to act according to the general usage, practice and course of business of such institutions. It is usually entrusted with all the funds of the bank in cash, notes, bills and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank; he receives directly and through subordinate officers all moneys and notes; he delivers up all discounted notes and other securities, when payments have been made; he draws checks from time to time for moneys wherever the the bank has deposits. In short, he is considered the executive officer of the bank through whom the whole moneyed operations of the bank, in paying or receiving debts, or disposing or transferring securities, are conducted. *Fleckner v. Bank*, 8 Wheat. 360; Story on Agency, sec. 114; Angell and Ames on Corp. 295–297.

The acts of a cashier, done in the ordinary course of the business actually confided to such an officer, may be regarded *prima facie* as coming within the scope of his duty. *Bank v. Perkins*, 29 N. Y. 554.

*Bank v. Haskell*, 51 N. H. 116, was where a surety was told by a cashier of the bank that the only note in the bank signed by him as surety for another had been paid, or secured, so that he need give himself no further trouble about it. The question in the case was whether these facts, if found, would constitute a good defense, or whether they were admissible. In the course of the opinion the court says: "We think the cashier of a bank has, ordinarily, no power to discharge a debtor of the bank without payment, or to bind the bank by an agreement that the surety should not be called upon to pay a note he had signed, or that he would have no further trouble from it. At least, we can not say that, as a matter of law, he has such authority. He may, however, have been specially empowered to do the act, or he may have been allowed by the directors to take general charge of the management of the business of the bank, so as to bring such agreement or statement within the scope of his agency. This is matter of proof, but, as the matter now stands, we can not hold that the cashier had power to discharge the surety without payment of the debt." And a like ruling was made by the supreme court of Nebraska, in *Bank v. Hart*, 55 N. W. Rep. 631. The rule is likewise so stated in section 252, in Brandt on Suretyship.

*Savings Ass'n v. Sailer*, 63 Mo. 24, was where a surety called upon the bank to ascertain whether a note on which he was surety had been paid by the principal and was informed by the cashier that the note had not been paid, but that the bank had made arrangements with the principal by which the bank looked to him alone for payment, and that it did not look any longer

to the surety for payment of the note; and it was ruled, upon the authority of *Bank v. Haskell, supra*, that the agreement to discharge the surety was not within the ordinary scope of the cashier's authority. It is remarked by Judge NAPTON, who delivered the opinion in the case: "A cashier has, ordinarily, no power to discharge a debtor without payment, nor has he any authority to bind the bank by an agreement that a surety shall not be called on to pay the note he has signed, or that he shall have no further trouble from it. A special authority to discharge sureties may be proved, or a cashier may be allowed to represent stockholders generally without regard to the usual duties of cashier. But there must be proof of such authority, as, upon general principles, he does not have any such powers." And in *Chew v. Ellingwood*, 86 Mo. 260, it was expressly decided that the representations made by the cashier of the bank to the surety, that the latter will no longer be looked to for payment, will not bind the bank, nor will the bank be estopped to assert its claim by reason of such assurance.

Other authorities might be cited in line with the foregoing, but this is deemed unnecessary. It is manifest from these principles and authorities, that the assurance given by the plaintiff's cashier to the defendant, as surety for Flora, was ineffectual to bind the bank or estop it to claim payment of the debt for which the defendant had bound himself as surety on Flora's unpaid note to plaintiff. The statute, as we have already seen, intrusts the management of the business of plaintiff to its board of directors. The cashier is the executive officer of the plaintiff, and his acts, to bind it, must be in the ordinary course of his duties. And the power to discharge a surety on a note without payment, according to the adjudications to which we have referred, is not comprehended in the term "ordinary

business." This power can not be exercised by a cashier, unless expressly delegated to him by the board of directors.

The defendant testified that the cashier of the plaintiff assured him, if he helped plaintiff get the forged note secured, on which defendant was not bound, that the plaintiff would release defendant from the note on which he was liable. Since the power of the cashier to make such an agreement to bind the plaintiff was not within the scope of his ordinary duties, and since it nowhere appears that there was a delegation of this power to him by the board of directors, we must rule the testimony of the defendant tending to prove the agreement made by the cashier for the defendant's release, was inadmissible. And, inasmuch as the proof of the release has for its sole support the testimony of defendant to the effect just stated, it follows as an inevitable corollary to the ruling just made, that the defendant's second instruction, which informed the jury that if they found from the evidence that plaintiff, through its officers, agreed with defendant that if he would assist in securing to the bank the debt of Flora, it would release him from further liability on the debt sued for, etc., was erroneous. No officer of the bank, except the cashier, as appears from the evidence, had made any such agreement with defendant; and, as such an agreement was not within the scope of his power, it is plain the instruction was without evidence to support it and should not have been given.

It will be observed from the pleadings that the issue then made was, whether the defendant had been released under an agreement made by defendant with the plaintiff's cashier, and not whether Flora delivered to plaintiff the Mobray deed of trust as collateral security on the note on which defendant was liable as surety. The answer alleges that the Mobray deed of

trust was delivered to plaintiff to secure Flora's renewal note and not that on which defendant was liable as surety. It therefore follows that the principle announced in *Bank v. Bartle*, 114 Mo. 280, and the other cases cited by defendant, can have no application. The plaintiff is not alleged to have omitted the discharge of any duty it owed the defendant as surety on any obligation of the latter to the plaintiff.

In the view of the case expressed, it becomes unnecessary to notice the plaintiff's criticisms of the court's emendations of the instructions asked by it.

The judgment will be reversed and the cause remanded. All concur.